THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS⁰ PEPITONE and PASQUALE MANFRE, Appellants.

First Department, May 20, 1975

*John Nicholas Iannuzzi* of counsel *(Bambury, Iannuzzi, Iannuzzi & Bambury,* attorneys), for appellants.

*Karen Zelfman Bell* of counsel *(Robert J. Hume, III,* with her on the brief; *Mario Merola, District Attorney),* for respondent.

CAPOZZOLI, J. An examination of this record leads us to the conclusion that the search and seizure herein were illegal and in violation of the constitutional rights of the defendants-appellants.

The defendants were indicted for a violation of subdivision 2 of section 481 of article 20 of the New York State Tax Law which forbids the criminal possession and transportation of untaxed cigarettes. They were convicted upon their pleas of guilty to a violation of this law as a misdemeanor.

Prior thereto the defendants moved for an order of suppression and contended that the search and seizure, which led to the prosecution, were illegal and in violation of their constitu-

tional rights. This motion was denied and the guilty pleas followed.

It is established law that, while the person who claims to be aggrieved by an illegal search and seizure has the burden of proof, nevertheless, as was stated by the Court of Appeals in *People v Berrios* (28 NY2d 361, 367):

"The People must, of course, always show that police conduct was reasonable * * * the People are nevertheless put to 'the burden of *going forward* to show the legality of the police conduct in the first instance' [citing case]."

Applying these rules to the case at bar, it is difficult to find that the search here was incidental to a lawful arrest, which is the only ground upon which the search and seizure could rest, since there was no search warrant.

Pursuant to the above, the People did go forward with their proof in an attempt to justify the search and seizure. The only witnesses produced by the People were three police officers and an examination of their testimony discloses confusion, contradictions, uncertainty and conflicting versions of what took place. Did the police have valid legal evidence upon which to base the arrest or did they arrest first and then get the evidence later? It is difficult to say from the record. Perhaps the difficulty in this case can be understood if we quote the court's language found at page 144 of the record:

"THE COURT: * * * I asked one of the officers which came first the chicken or the egg, and I indicated on the prior testimony he testified that he placed DeStefano under arrest and then he proceeded to search.

MR. AIDALA: He changed.

THE COURT: He changed back and said they first searched and then placed him under arrest." In any event, whether one accepts one version or the other, the result should be the same, the motion to suppress should have been granted because of the failure to establish the requisite probable cause.

We are led to this conclusion in great measure by the decision in *People v Garafolo* (44 AD2d 86). In that case the defendant also was charged with possession of untaxed cigarettes and convicted therefor and, as in the case at bar, the same questions were brought up for review on that appeal. (1) Whether there was sufficient credible evidence to conclude that there existed reasonable cause for the defendant's initial arrest and (2) whether the subsequent search of his garage

was in violation of the Fourth Amendment. By a divided court it was found that the initial arrest was illegal and everything which followed thereafter, such as the entry into the garage and the finding of the cigarettes therein, violated the constitutional rights of the defendant.

In the course of the majority's opinion we find observations which are unquestionably applicable to the case at bar. At pages 88 to 89 of the opinion the court said: "We refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections. * * * Obviously, Murphy could not have observed from the public sidewalk the lack of a tax stamp on individual packs of cigarettes contained in cartons and encased in unopened boxes in the back of an unlighted garage. It is only slightly less unbelievable that he made a similar observation through a convenient tear in a carton in an open bag as he passed the defendant on the street some two to four feet from him." Later, at page 89, the court said: "This is not a case of seizing contraband in open view * * *. Here, a search was necessary before it could be determined that these cigarettes were unstamped and untaxed."

The case of *Henry v United States* (361 US 98) considered a similar legal question to that which is raised in the case at bar, although it did not involve untaxed cigarettes. In that case Federal officers were investigating the theft of whiskey from an interstate shipment. On the basis of a vague tip possibly connecting the defendant with an interstate theft, the officers observed the defendant and another come out of a tavern, enter an automobile and drive, by a circuitous route, to an alley alongside of residential premises, at which point the automobile was brought to a stop. The defendant left the car, went into the building and returned to the automobile with some cartons and drove away. The officers attempted to follow, but lost the automobile. Later they again saw the car at the tavern and the same pattern was repeated. This time, when the defendant left the alley, the officers stopped the automobile, searched the cartons and found, not stolen whiskey, but stolen radios. The Supreme Court held that no probable cause existed.

Insofar as the case at bar is concerned, we should also remember that, prior to the time of the arrest, most of the observations were made from a truck which was about 55 feet from the entrance to the garage. The same is true as to the

observations testified to by Officer Santiago just before the arrest of these defendants. At this point one is prompted to ask, why did the police fail to apply for a search warrant? *(People v Spinelli,* 35 NY2d 77.)

It was not until Officer Rivers went to the open trunk of the Chevrolet, opened a large box with a knife, saw its contents, and then learned that the packs did not contain the proper New York State tax stamps. At that time, according to the police claim, the arrest of the defendants was finalized, yet there is testimony in the record, by the police, that, prior thereto, the defendants could not have left the scene if they had wanted to do so because they were, in effect, seized by the police. It is obvious that the defendants were in custody before the official arrest was made and before it was definitely ascertained that the box found in the trunk of the Chevrolet contained untaxed cigarettes.

As was said in *People v Cantor* (36 NY2d 106, 111–112): "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment * * *. Here the defendant was deprived of his freedom of movement when he was encircled by three police officers as he stood alongside his car which was blocked by the police vehicle. At that moment he could not have proceeded on his way, therefore he was seized."

Under the circumstances disclosed by the record the police might well have had the right to question the defendants as to their activities. *(People v Rosemond,* 26 NY2d 101.) That is exactly what should have been done in this case instead of taking them into custody without such questioning. (Ringel, Searches and Seizures, Arrests and Confessions, ch 19.)

We realize that these cases involving searches and seizures can become very complicated and very difficult, but, because of what is above stated, we conclude that the motion to suppress should have been granted and the indictment dismissed. We are not remanding the case to the Criminal Term for further hearing on the issue of whether or not the arrest was lawful because there is no claim, nor any intimation by the People, that they have any further information which would justify the arrest.

Accordingly, the judgments should be reversed, on the law, and the indictments dismissed.

LUPIANO, J. (dissenting). Defendants were convicted, upon their guilty pleas, of violation of subdivision 2 of section 481 of article 20 of the New York State Tax Law as a misdemeanor. Their criminal conduct consisted of the possession and transportation of untaxed cigarettes. The critical issue raised on this appeal is whether there was probable cause to arrest defendants and conduct a search and seizure incidental to such arrest. Proper resolution of this issue entails a full delineation of the circumstances which culminated in the arrest of the defendants.

As a consequence of information received from an informant on August 18, 1972, as to certain suspicious activity occurring at a one-story, three-car garage located in The Bronx, the police initiated on August 19, 1972, surveillance of that garage. The activity described by the informant consisted of men entering and leaving the garage premises with large brown paper bags late at night. Observation of the premises on August 19, 1972, for one hour proved fruitless. Subsequently, on August 26, 1972, three police officers, in furtherance of the surveillance, observed a blue 1965 Chevrolet back up to the door of the garage at about 9:00 A.M. and the car's occupant remove brown boxes from the garage into the car for approximately one hour before leaving with the vehicle. On September 16, 1972, at about 9:00 A.M., the officers, ensconced in a specially prepared observation truck, saw the 1965 Chevrolet drive up to the garage, wait awhile, leave and return about 15 minutes later. The operator of this vehicle got out and met the defendant Louis Pepitone who was walking up the street toward him. Both entered the garage and approximately 15 minutes later began to carry boxes out of the premises which they deposited in the trunk and rear seat of Pepitone's vehicle parked alongside the garage. Of the 10 or 11 boxes, approximately four-and-a-half feet long and a foot deep, all were wrapped, in brown paper, except one which had the word "Winston" visible on its side and another which had no top and in which cartons of Winstons were visible. The men then locked up the garage and left in their respective cars. A covert attempt to follow their vehicles was unsuccessful. On October 6, 1972, one Shipish, a supervisor of the New York State Tax Department, met with one of the officers and informed him that Pepitone had been previously arrested for untaxed cigarettes violation. At approximately 1:15 P.M., on November 10, 1972, the observation truck was parked two-car lengths from the garage on the garage side of the street. The

officers inside the truck observed defendant Pepitone opening the garage, whereupon defendant Pasquale Manfre backed a Chevrolet about three fourths of the way into the garage. Five minutes later another vehicle drove up and was backed by its operator up to the front of the Chevrolet. The operator of this second car was given a box, opened at the top, filled with approximately 13 cartons of cigarettes which he placed in his vehicle. At this point, one of the police officers left the truck, identified himself and placed this individual under arrest. Two other officers entered the open garage, opened a box of cigarettes with a knife and arrested the defendants. Many empty cigarette cartons were visible in the garage. Also in the back of the garage there were observed numerous stacked boxes wrapped in brown paper, some of which had pieces of paper ripped off revealing the names of cigarettes. The boxes of cigarettes visible in the open trunk of the Chevrolet and in the second vehicle did not have tax stamps.

On their motion for an order of suppression which was denied, defendants contended that the surveillance by the police officers did not rise to the level of probable cause to arrest since the cartons of cigarettes observed did not explicitly reveal the absence of a New York tax stamp. It is true that the officer did not have proof positive that the defendants committed a crime prior to the seizure of the cigarettes. Prior to this time, they could not tell if the individual packs of cigarettes contained the tax stamp. However, it is equally clear and beyond cavil that on this record there existed probable cause to arrest, that is, "observations or information sufficient to move a reasonable man to conclude that a crime is being committed or attempted" *(People v White,* 16 NY2d 270, 273). The nature and extent of the surveillance, the activities of the defendants under the eyes of that surveillance, and the relevant circumstances mandate the conclusion that a more than sufficient basis existed for accosting and arresting the defendants and seizing the cartons of cigarettes.

The majority opinion admittedly depends "in great measure" on the decision in *People v Garafolo* (44 AD2d 86 [2d Dept, 1974]). I am in complete agreement with the principles of law enunciated therein. A comparison of the circumstances in that case with those present herein compels the conclusion that such principles of law sustain the finding of probable cause in the instant matter. In *People v Garafolo,* the arresting officer, after receiving some prior hearsay information,

went to defendant's house and followed defendant from there to a private garage. After opening the garage and the trunk of the car, the defendant emerged from the garage with a brown paper bag under his arm. The officer observed 100 to 200 cartons of cigarettes in the rear of the garage in addition to a number of closed cardboard cartons. Defendant was arrested, the officer claiming that the paper bag was opened at the top and that one of the cartons had a loose flap disclosing a cigarette pack inside the carton with a North Carolina decal on the bottom. The appellate court viewed the officer's testimony as incredible and stated in pertinent part: "It may well be that agent Murphy had information from a reliable source which, coupled with what he believably saw, would justify the arrest. There is an intimation in the record that he did, but no attempt was made to prove it. * * * However, if such evidence exists the People should have an opportunity to adduce it" *(People v Garafolo, supra,* p 89). The instant circumstances do not entail a "one-shot deal" as presented by *Garafolo,* but involve a carefully organized plan of surveillance extending over a long period of time, culminating in the arrests of the defendants, predicated upon pointed observation and information. The initial suspicion that a crime involving untaxed cigarettes had been and was under way ripened into probable cause justifying arrest. To declare in these circumstances that it is necessary to observe the absence of the requisite revenue stamp on the packs of cigarettes before concluding that a crime involving untaxed cigarettes was being committed, offends common sense experience and renders intelligent and reasoned police enforcement of the statute (Tax Law, art 20, § 481, subd 2) impossible. In these circumstances, the majority would require the projection of an invisible ray to ascertain the absence of revenue stamps before arriving at a reasoned judgment that the culprits were engaging in a crime involving untaxed cigarettes.

*Henry v United States* (361 US 98) cited by the majority is supportive of the reasoned conclusion that probable cause existed under the circumstances herein to arrest defendants and conduct a search and seizure incidental to such arrest. Mr. Justice DOUGLAS succinctly stated the facts in *Henry v United States* as follows (pp 99–100): "There was a theft from an interstate shipment of whiskey at a terminal in Chicago. The next day two FBI agents were in the neighborhood investigating it. They saw petitioner and one Pierotti walk

across a street from a tavern and get into an automobile. The agents had been given, by the employer of Pierotti, information of an undisclosed nature 'concerning the implication of the defendant Pierotti with interstate shipments'. But so far as the record shows, *he never went so far as to tell the agents he suspected Pierotti of any such thefts.* The agents followed the car and saw it enter an alley and stop. Petitioner got out of the car, entered a gangway leading to residential premises and returned in a few minutes with some cartons. He placed them in the car and he and Pierotti drove off. The agents were unable to follow the car. But later they found it parked at the same place near the tavern. Shortly they saw petitioner and Pierotti leave the tavern, get into the car, and drive off. The car stopped in the same alley as before; petitioner entered the same gangway and returned with more cartons. The agents observed this transaction from a distance of some 300 feet and *could not determine the size, number or contents of the cartons.* As the car drove off the agents followed it and finally, when they met it, waved it to a stop. * * * The agents searched the car, placed the cartons * * * in their car, took the merchandise and petitioner and Pierotti to their office and held them for about two hours when the agents learned that the cartons contained stolen radios. They then placed the men under formal arrest" (emphasis supplied). In holding that there was no probable cause for arrest (the interruption of the two men and restriction of their liberty of movement), the United States Supreme Court noted the following: (1) the general rumor as to Pierotti's involvement in some unspecified interstate shipments was practically meaningless in relation to the stolen whiskey (p 103), (2) the absence of any suspicion of criminal activity prior to this time on petitioner's part coupled with acts that were outwardly innocent did not render petitioner subject to arrest (p 103), and (3) "there was nothing to indicate that the cartons here in issue probably contained liquor" (p 104). It was also aptly noted that the movements of the men had no mark of furtive action and the packages were picked up in a residential section rather than from a terminal or from an interstate trucking platform. I fully subscribe to Mr. Justice DOUGLAS' observation that "probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed" (p 102).

Comparison of the facts in *Henry v United States (supra)*

with the circumstances in the instant matter clearly warrants the conclusion that probable cause existed for the arrest of defendants. To reiterate: surveillance was initiated as a consequence of information received from an informant; the surveillance was of substantial duration; during the course of the investigation a supervisor of the New York State Tax Department supplied information that Pepitone had been previously arrested for untaxed cigarettes violation; the boxes being transported were observed to be four-and-a-half feet long and a foot deep; on one occasion one of the boxes had the word "Winston" visible on its side and another had no top, thereby displaying cartons of Winstons within; at the time of arrest many empty cigarette cartons were visible in the garage and in the back were numerous visible stacked boxes, some of which had ripped paper wrappers thereby disclosing the names of cigarettes; boxes of cigarettes were visible in the open trunk of the Chevrolet and in the second vehicle. Of great pertinence is the trenchant observation in *Henry v United States (supra,* p 104): "The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. Its shape and design might at times be adequate. The weight of it and the manner in which it is carried might at times be enough".

In the search for truth and in the delicate balancing of the rights of the individual defendant and of society as champion of the innocent victim, we must be mindful of the fact that reason and common sense are sure guides, not to be readily discarded. Patently, the conclusion that the cigarettes were contraband, thus justifying the arrest of the defendants, went beyond mere speculation and was based on *reasonable* grounds.

Therefore, I dissent and conclude that the judgments of the Supreme Court, Bronx County (D. SULLIVAN, J.), rendered November 14 and 16, 1973, convicting defendants, upon their guilty pleas, of violation of subdivision 2 of section 481 of article 20 of the New York State Tax Law as a misdemeanor, should be affirmed.

MARKEWICH and LANE, JJ., concur with CAPOZZOLI, J.; STEVENS, P. J., and LUPIANO, J., dissent in an opinion by LUPIANO, J.

Judgments, Supreme Court, Bronx County, each rendered

on November 16, 1973, reversed, on the law, and the indictments dismissed.