■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL MARTINEZ, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered December 7, 1977, convicting him of criminal possession of a controlled substance in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress physical evidence. Judgment reversed, on the law, motion to suppress granted, indictment dismissed, and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The defendant and a companion were riding in an automobile which was stopped by the police on the ground that a traffic violation had been committed. As the defendant stepped from the vehicle, a plastic bag containing narcotics allegedly fell from his person to the ground. The defendant was arrested and a subsequent search of the vehicle's glove compartment yielded additional narcotics. The issue on appeal is whether the court properly denied the defendant's motion to suppress this physical evidence. At the suppression hearing, Police Officer Paul Klyap testified that on October 30, 1975 at 11:00 P.M. he was on an anticrime patrol, in plainclothes and in an unmarked police car, in the vicinity of Jamaica Avenue in Queens. He was accompanied by Lieutenant Paul Sheridan who was driving. As he and Sheridan drove past the intersection of Jamaica Avenue and 102nd Street, he observed the defendant seated on the driver's side of a car which was parked at a bus stop on Jamaica Avenue. He continued to observe the scene by looking over his shoulder. When the police car was approximately 150 feet away from the intersection, Klyap saw someone run from a nearby bar and enter the passenger side of the defendant's car. Klyap then saw the car back into 102nd Street from Jamaica Avenue, the rear wheels going past the crosswalk. The car then turned and proceeded east on Jamaica Avenue. By this time, Sheridan had made a U-turn and began following the defendant's vehicle. Klyap made a radio check to determine whether the vehicle had been stolen. The report, however, was negative. The police car had no siren or flashing light on. Klyap testified he and Sheridan were trying to stop the defendant's car, but were unable to pull alongside of it. They were traveling at 40 miles per hour, and there was no traffic between them and the defendant. Klyap stated that the defendant's car came to a stop at Jamaica Avenue and 118th Street, where it was blocked by traffic while attempting to make a U-turn. Klyap exited from his car and approached the defendant's vehicle. He displayed his shield, identified himself as a police officer, and asked the defendant for his license and registration. Since he felt that the defendant did not understand him, Klyap motioned for him to exit the car. As the defendant stepped out, Klyap saw a plastic bag containing white powder fall to the ground from the defendant's hand, or from under his coat. Klyap picked it up, arrested the defendant for possession of narcotics, handcuffed him and read the *Miranda* warnings. He led the defendant to the passenger's side of the car and asked the passenger to exit. During this time, the passenger opened the glove compartment, where

Klyap observed a rental agreement for the car and a rolled-up brown paper bag. Klyap removed the bag and looked into it; he saw what appeared to be narcotics. He then arrested the passenger. The defendant's arrest report indicated that he was also charged with traffic infractions. The traffic charges were: (1) backing into the intersection at Jamaica Avenue and 102nd Street, and (2) driving without a license, since the defendant produced a Puerto Rico, but not a New York driver's license. When Klyap was asked on cross-examination whether the charge concerning backing into the intersection was added as an afterthought to justify stopping the defendant's vehicle, he responded "Yes". On redirect, he stated that the traffic charge was added because "That's the reason they were stopped". Lieutenant Sheridan also testified at the hearing. When asked why the defendant's vehicle was not overtaken between 102nd and 118th Streets, he replied: "I was still curious about it. I was still curious as to where it was going to go and what—I knew I wouldn't lose it". The fact that Klyap was running a radio check to see if the car was stolen was "a factor" but not the whole consideration for not overtaking it. He also stated that the defendant's car stopped by itself, after pulling over to the south side of Jamaica Avenue at 118th Street. When Klyap approached the defendant's car, Sheridan remained behind. He then saw something fall from the defendant's coat. He stated that he then drew his gun. He thereafter testified that he did not have his gun drawn when he approached the defendant's car. When asked directly "did you ever draw your gun?" he replied, "No". Sheridan also testified that it was he who had removed the brown bag from the glove compartment. Although a defendant carries the burden of proof at a suppression hearing, "the People are nevertheless put to 'the burden of *going forward* to show the legality of the police conduct in the first instance'" *(People v Berrios,* 28 NY2d 361, 367, citing *People v Malinsky,* 15 NY2d 86, 91, n 2, emphasis in original). In *Berrios (supra,* p 369), the Court of Appeals specifically noted that "Where the Judge at the suppression hearing determines that the testimony of the police officer is unworthy of belief, he should conclude that the People have not met their burden of coming forward with sufficient evidence and grant the motion to suppress". We conclude that the police officer's testimony in this case is not worthy of belief, since it is confusing and self-contradictory, and has the "appearances of having been patently tailored to nullify constitutional objections" (see *People v Garafolo,* 44 AD2d 86, 88; see, also, *People v Pepitone,* 48 AD2d 135, affd 39 NY2d 907). When Klyap was first asked if the traffic infraction was added to the charges as an afterthought to justify the stop of the defendant's car, he answered "Yes". He then testified that the traffic violation was the reason for the stop. Even if we credit this latter statement, it contradicts Klyap's prior testimony that the defendant's car came to a stop by itself when blocked by traffic at 118th Street. This testimony, in turn, is contradicted to a degree by his other statement that he and Sheridan were attempting to stop the defendant, but were unable to pull alongside his car. The credibility of this last statement is belied by Klyap's testimony that there was no traffic between the officer's car and the defendant's. Additionally, it does not appear plausible that the police were attempting to stop the defendant, but were traveling at only 40 miles per hour. Sheridan's version of why the defendant's vehicle was not stopped differs somewhat from Klyap's. He stated that the running of the radio check was one reason, but he was also "curious" about the situation. He further testified that he had drawn his gun, but later said that he had not. Sheridan stated that he had removed the brown bag from the glove com-

partment, while Klyap testified that he was the one who had done that. Upon scrutiny of the People's evidence at the suppression hearing, we can only conclude that they failed to carry their burden of going forward and demonstrating the legality of the police conduct in the first instance. Damiani, J. P., Titone, Margett and Mangano, JJ., concur.