■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER J. MIRET-GONZALEZ, Appellant.—Appeal by the defendant from a judgment of the County Court, Rockland County (Kelly, J.), rendered January 4, 1989, convicting him of criminal possession of a controlled substance in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed and the matter is remitted to the County Court, Rockland County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The hearing record discloses that, at approximately 4:45 P.M. on August 30, 1987, while on motor patrol on Route 303 in Orangetown, Officer Robert Goldrick observed a speeding white Pontiac automobile with Florida license plates. According to Officer Goldrick's testimony, after following the vehicle for about one half to three quarters of a mile he noticed that the car also had a defective brake light. He thereupon pulled the car over, approached the passenger side of the vehicle and requested from the defendant, who was driving the car, his driver's license and the vehicle's registration form. While the defendant and his passenger were searching in the glove compartment for the registration, according to Officer Goldrick, a children's toy box fell from the compartment and was placed by the passenger on the seat next to him. Protruding from the box was a plastic ziplock bag. Officer Goldrick claimed that he made a mental note of the bag because he thought it unusual that such a bag would be in a toy box with the concomitant risk of a child smothering from it. Otherwise, he testified, his suspicion was not aroused by the box and bag.

Officer Goldrick testified further that he received the license

and registration form from the defendant and also requested and received the name and date of birth of the passenger, ostensibly because the passenger was not wearing a seat belt when he approached the car. All this information, according to the officer, was checked in New York and Florida by computer through use of his two-way radio. The procedure, according to Officer Goldrick, took three minutes and produced negative results, that is, there were no outstanding warrants, suspensions or revocations on the defendant, his passenger or the vehicle. Officer Goldrick stated that he did not write out summonses for these traffic infractions during the time he was in the patrol car because he did not like to remain in his car for long periods of time and because there were other things which he wanted to investigate, such as the tire tread, the paint on the car, the vehicle identification number (hereinafter VIN) and the tinted windows. Officer Goldrick testified further that while the radio check was proceeding he called for other police officers, although he admitted that both occupants were cooperative, he did not feel threatened, his weapon was not drawn, and he had no suspicion that the car was stolen. As a result of Officer Goldrick's call, Officer Neeck responded to the scene.

Officer Goldrick testified further that he then returned to the defendant's vehicle and, after observing the VIN on the dashboard, he noticed that the first number (1) and the first letter (G) on the registration form were missing, although the full number appeared in the VIN on the dashboard. He testified that he knew that the number "1" meant the car had been manufactured in the United States and the letter "G" meant that the car was manufactured by General Motors Corporation, but that, nevertheless, he told the defendant that the VIN on the registration was "completely off", whereupon the defendant and the passenger exited the car. Officer Goldrick added that the defendant told him that on previous occasions when he was stopped, the police officers had examined the VIN on the car door. According to Officer Goldrick's further testimony, after telling Officer Neeck to "keep an eye on these two fellows", he opened the car door wider than the defendant had left it, and admittedly wider than was necessary to see the VIN, and then got down on bended knee and looked at the VIN. Turning his head to the right, he claimed that he could see inside the toy box which, he noticed, contained a white chunky substance. He then placed the defendant and his passenger under arrest.

Officer Goldrick was impeached in cross-examination with

an incident report, written by him on the same day as the arrest, in which he had indicated that he had taken up the box and looked inside it before seeing the white substance. When confronted with this apparent inconsistency, Officer Goldrick's response was that he had neglected to include in the report that he had seen the drug prior to opening the box, although he claimed that the report was accurate.

The defendant's motion to suppress the physical evidence was denied and, upon his plea of guilty, the defendant was convicted and sentenced. For the reasons that follow, we conclude that branch of the defendant's omnibus motion which was to suppress physical evidence should have been granted, and the indictment against him dismissed.

We are satisfied that the testimony of Officer Goldrick, who was the only witness at the hearing, was tailored to meet constitutional objections. As this court stated in *People v Garafolo* (44 AD2d 86, 88): "It is well settled, of course, that issues of credibility are primarily for the trial court and its determination is entitled to great weight *(People* v. *Atlas,* 183 App. Div. 595, 600, affd. 230 N. Y. 629). However, reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification (5A C. J. S., Appeal and Error, § 1656[3]). We refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge. This concept is well stated in section 649 of 22 New York Jurisprudence, Evidence, as follows: 'The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case.' (See, also, to the same effect, *People* v. *Galbo,* 218 N. Y. 283; Ann. 2 A. L. R. 1227; 32A C. J. S., Evidence, § 1031[3].)" *(See also, People v Prochilo,* 41 NY2d 759, 761; *People v Armstead,* 98 AD2d 726.)* Officer Goldrick testified that his suspicions were not aroused by the toy box with the protruding ziplock bag, apart from his avuncular concerns that a child could be smothered thereby. He also stated that he had no information or suspicion that the car had been stolen. He knew that the missing figures in the VIN on the registration were "1" and "G" and he knew their import. Yet, despite all this and, notwithstanding a radio

check which produced negative results as to both the defendant and his passenger, Officer Goldrick felt compelled to conduct a general investigation of the car. We find it highly improbable, under the circumstances, that Officer Goldrick could have considered it necessary to launch into an investigation of a car after a radio check had shown it to be legitimate, especially to investigate such incidentals as tire tread and paint, none of which was the predicate for the stop. Further, we remain unconvinced by Officer Goldrick's subtle testimonial reversal of the sequence of events as appeared in his incident report.

The People contend that the search was conducted with the defendant's consent, in that the defendant voluntarily exited the car in order to show Officer Goldrick the VIN located on the door. However, before a search can be described as consensual, there must be a "careful scrutiny of all the surrounding circumstances" *(Schneckloth v Bustamonte,* 412 US 218, 226). When the record is examined the allegedly consensual basis of the search seemingly evaporates. The defendant exited his car in direct response to Officer Goldrick's statement that the VIN on the defendant's registration was "completely off". In view of the officer's awareness of what was missing on the registration, as well as his examination of the VIN on the dashboard and a radio check which produced negative results, this statement was an obvious pretext to conduct his general investigation of the inside of the car. Further, the officer admitted opening the door much wider than was necessary to view the VIN on the door. Upon reviewing all of these surrounding circumstances, we find that the People failed to establish that the defendant voluntarily consented to Goldrick's search of the car.

Finally, the People contend that the contraband was properly seized from the defendant's car because it was in plain view. Again, we disagree. "It has consistently been held that plain view *alone* will never justify a warrantless search and that the discovery of the object must have been inadvertent and not planned or anticipated by the authorities *(Coolidge v New Hampshire,* 403 US 443, *reh denied* 404 US 874; *People v Jackson,* 41 NY2d 146)" *(People v Rose,* 125 AD2d 727, 729). Here the discovery of the drug was anything but inadvertent. Once the information on the defendant's license and the vehicle's registration had been confirmed, there was no justification for further detaining the defendant *(see, People v Milaski,* 62 NY2d 147, 156; *People v Rose, supra).* Moreover, it is doubtful as to just how plain the view of the drug was, in light

of the conflict between the officer's prior incident report and his testimony on cross-examination.

For all of the foregoing reasons, we grant the defendant's suppression motion, reverse the judgment of conviction, and dismiss the indictment. Thompson, J. P., Bracken, Brown and Kunzeman, JJ., concur.