■ In the Matter of CARL W., a Person Alleged to be a Juvenile Delinquent, Appellant.—In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the appeal is from an order of disposition of the Family Court, Queens County (Schindler, J.), dated September 5, 1989, which, upon a fact-finding order of the same court, dated July 5, 1989, made pursuant to the appellant's admissions, found that the appellant had committed an act which, if committed by an adult, would have constituted the crime of criminal possession of a weapon in the third degree, and placed him with the New York State Division for Youth for a period of 18 months. The appeal brings up for review the fact-finding order dated July 5, 1989, and the denial, after a hearing, of that branch of the appellant's omnibus motion which was to suppress certain physical evidence.

Ordered that the order of disposition is reversed, on the law, without costs or disbursements, the fact-finding order is vacated, that branch of the appellant's omnibus motion which was to suppress physical evidence is granted, and the petition is dismissed.

On April 25, 1989, Police Officer Orlando Quintero and several other officers were assigned to the Street Narcotics Enforcement Unit, which was operating that day near Sutphin Boulevard in Queens County. At approximately 9:40 A.M., Officer Quintero and his fellow officers, attired in plain clothes, received a radio transmission from an officer named Gentile describing a possible drug suspect. Officer Gentile was stationed nearby in a police car, apparently observing the suspect on the street. Officer Quintero could not recall the content of the radio description and Officer Gentile did not appear on behalf of the presentment agency at the subsequently-conducted suppression hearing. After receiving the transmission, Officer Quintero and his fellow officers arrested an adult drug suspect and secured him by handcuffing him and placing him face-down on the sidewalk. In addition to Quintero, who was next to the immobilized arrestee, two or

three fellow officers wearing their shields on chains and carrying radios were in similar proximity to the handcuffed suspect.

According to Officer Quintero's direct testimony, after the suspect had been apprehended and handcuffed, he received a second radio message from Officer Gentile which stated only that Quintero should, "[g]rab the kid in the black". The radio transmission did not indicate what, if any, criminal conduct had been committed by the "kid in the black". Quintero, who was then some three feet from the handcuffed suspect, testified that about this time, the appellant herein, who was dressed in black, "walked up right next to [him]". Despite the foregoing, Quintero did not recognize the appellant as the person to whom the radio message might have referred. It was at this point in time, however, that the appellant allegedly motioned to the suspect, who was lying face-down on the sidewalk in handcuffs, and stated, "[l]et's get out of here". Quintero testified that upon hearing the appellant speak to the adult suspect, he realized that the appellant might have been the "kid in the black" to whom the radio message had referred. Quintero called out, asking the appellant to "come over here", after which the appellant fled. According to Quintero, after the appellant had run approximately 20 to 25 feet, he "threw himself on the floor" and Quintero was able to apprehend him. As Quintero and a fellow officer were "pick-[ing] up" the appellant from the ground, a weapon dropped out of the appellant's pants pocket. Shortly after describing the weapon as falling from the appellant's pants pocket, the officer testified that the weapon fell out from the bottom of the appellant's pants.

After the foregoing evidence had been adduced, the Family Court, describing the case as a "close" one, denied suppression, observing that under the circumstances the appellant's statement, "let's get out of here," to the adult arrestee, together with the additional attendant circumstances, established that Officer Quintero had "sufficient grounds" to pursue and detain the appellant. On appeal, the appellant contends, *inter alia,* that under the circumstances, the arresting officer's testimony was implausible and unworthy of belief. We agree.

While great weight must be accorded the findings of the hearing court *(see, People v Prochilo,* 41 NY2d 759), we have also observed that in assessing credibility "we should not discard common sense and common knowledge" *(People v Garafolo,* 44 AD2d 86, 88; *see, People v Miret-Gonzalez,* 159 AD2d 647, 649). More specifically, " ' "[t]he rule is that testi-

mony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case" ' " *(People v Miret-Gonzalez, supra,* quoting from 22 NY Jur, Evidence, § 649; *see also, People v Quinones,* 61 AD2d 765). We have declined to credit testimony "which has all appearances of being patently tailored to nullify constitutional objections" *(People v Miret-Gonzalez, supra,* at 649; *see also, People v Garafolo, supra).* It has also been observed that the People must carry the burden in the first instance of going forward with credible evidence establishing the legality of the police conduct in question *(see, People v Whitehurst,* 25 NY2d 389, 391; *see also, People v Benjamin,* 51 NY2d 267, 270; *People v Berrios,* 28 NY2d 361, 367; *People v Martinez,* 71 AD2d 905, 906; *People v Quinones, supra; People v Pepitone,* 48 AD2d 135, 136, *affd* 39 NY2d 907). The presentment agency has failed to discharge its burden in this respect.

Turning to the challenged testimony and considering as hallmarks the criteria of "common sense and common knowledge" *(People v Garafolo, supra,* at 88), we find that key portions of Officer Quintero's testimony depart from the inferences which flow from the relevant credible evidence. Specifically, Officer Quintero's assertion that the appellant uttered the patently illogical statement, "[l]et's get out of here," to a fully secured arrestee has the appearance of being tailored so as to justify the subsequent pursuit and detention of the appellant where the existing predicate of suspicion would not have warranted such an intrusion. Moreover, the statement attributed to the appellant by Officer Quintero contained a command which called for the performance of an act by the arrestee which was physically impossible under the circumstances presented. As a matter of "common sense and common knowledge," it defies credulity to accept the premise that a person would position himself next to a police officer at an arrest scene and make the incongruous statement, "[l]et's get out of here," to an arrestee surrounded by police officers, lying face-down on the sidewalk and immobilized by handcuffs *(see, People v Massiah,* 47 AD2d 931; *see also, People v Miret-Gonzalez, supra,* at 649). Moreover, the officer's testimony that the appellant "threw himself on the floor" during the ensuing chase is equally implausible under the circumstances and has the appearance "of having been patently tailored to nullify constitutional objections" *(People v Garafolo, supra,* at 88; *see,*

*People v Miret-Gonzalez, supra,* at 649; *People v Martinez, supra; People v Pepitone, supra; People v Massiah, supra).* Since the presentment agency failed to come forward in the first instance with sufficient credible evidence to establish the legality of the police conduct in question, suppression should have been granted.

In light of our determination, we need not reach the appellant's remaining contention. Bracken, J. P., Kooper, Sullivan and Lawrence, JJ., concur.