■ CHANI LIGHTMAN, Respondent, v TZVI FLAUM et al., Appellants. [717 NYS2d 617] —In an action, *inter alia,* to recover damages for breach of the fiduciary duty of confidentiality and the intentional infliction of emotional distress, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Goldstein, J.), dated March 4, 1999, as, upon converting their motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) to a motion for summary judgment, in effect, denied those branches of the motion which were for summary judgment dismissing the first, second, third, and fourth causes of action.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, those branches of the motion which were for summary judgment dismissing the first, second, third, and fourth causes of action are granted, and the complaint is dismissed.

The plaintiff, an Orthodox Jewish woman, was experiencing marital difficulties and turned to the defendant rabbis. During her talks with the defendants, she disclosed certain private information to them. However, either the plaintiff's mother or a friend were present during those conversations. The plaintiff subsequently commenced a divorce action against her husband. In opposition to the plaintiff's motion for pendente lite relief, her husband submitted affirmations by the defendants which contained some of the material she had disclosed to them. As a result of the disclosure, the plaintiff commenced this action against the defendants, asserting causes of action for, *inter alia,* breach of the fiduciary duty of confidentiality and the intentional infliction of emotional distress. Upon converting the defendants' motion to dismiss pursuant to CPLR 3211 (a) (7) to one for summary judgment, the Supreme Court, in effect, denied the defendants summary judgment on the causes of ac-

tion for breach of fiduciary duty, subject to a determination, *inter alia*, of whether the plaintiff's privilege had been waived by the presence of a third person. The Supreme Court also found that the defendants were not entitled to summary judgment on the third and fourth causes of action for intentional infliction of emotional distress. We reverse.

After the defendants made a prima facie showing that they were entitled to summary judgment as a matter of law, the plaintiff failed to demonstrate the existence of a triable issue of fact. Specifically, the plaintiff failed to show that the clergy-penitent privilege was not waived by the presence of a third person during her conversations with each of the defendants (*see, Zuckerman v City of New York,* 49 NY2d 557, 562). In view of this determination, we do not determine whether the plaintiff stated a cognizable claim for breach of fiduciary duty.

Likewise, the defendants are entitled to summary judgment dismissing the third and fourth causes of action alleging intentional infliction of emotional distress. The facts alleged regarding the defendants' conduct did not rise to a level which would satisfy the "extreme and outrageous conduct" element of such a cause of action and, therefore, summary judgment was warranted (*Freihofer v Hearst Corp.,* 65 NY2d 135). Santucci, J. P., Florio, and McGinity, JJ., concur.

S. Miller, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof denying that branch of the defendants' motion which was, in effect, for summary judgment dismissing the third and fourth causes of action to recover damages for the intentional infliction of emotional distress and substituting therefor a provision granting that branch of the motion, and otherwise affirming the order, with the following memorandum, in which Friedmann, J., concurs: I agree with my colleagues in the majority that the Supreme Court erred insofar as it failed to dismiss the plaintiff's causes of action to recover damages for intentional infliction of emotional distress. However, I most strenuously disagree insofar as my colleagues have determined, as a matter of law, that the plaintiff waived her right to seek redress for the defendants' obvious and intentional violations of their legal duty not to disclose confidences she imparted to them while seeking religious counseling. Insofar as pertinent to this appeal, CPLR 4505 provides a secular command that "thou shalt not tell." The defendants twice violated that command. Furthermore, as the Supreme Court found, the plaintiff has a private right of action for the fiduciary breach flowing from this statutory violation. Finally, the defendants have not

demonstrated to my satisfaction that the First Amendment precludes the imposition of liability where, as here, they engaged in intentional acts in clear violation of a valid and neutral enactment that was not intended to regulate religious conduct and which were, in any event, gratuitous under the facts of this case. Accordingly, I would sustain the first and second causes of action seeking to recover damages for the defendants' statutory/fiduciary violations subject to factual determinations to be made at trial as to whether the plaintiff waived the privilege.

# I

The facts underlying this appeal, with one critical exception to be discussed *infra*, are not in substantial dispute. The plaintiff Chani Lightman and her husband, Dr. Hylton Ivan Lightman, both Orthodox Jews, were experiencing marital difficulties that prompted the plaintiff to see her rabbis, the defendants, Tzvi Flaum and David Weinberger. In 1995, in the course of their discussions, the plaintiff revealed various personal matters concerning her dissatisfaction with the state of her marriage and that she was deviating from some of the strictures of her religion. Subsequent thereto, the defendant rabbis revealed these confidences to Dr. Lightman. Moreover, in the matrimonial action commenced by the plaintiff in 1996, the defendant rabbis gratuitously repeated their disclosures by way of affirmations submitted in opposition to the plaintiff's then-pending pendente lite application.

The plaintiff commenced this action in 1997 asserting five causes of action. Insofar as pertinent, the plaintiff's first two causes of action sought to recover damages for each of the defendant rabbis' intentional violations of the "penitent-clergy privilege" (*see,* CPLR 4505).

# II

To correctly decide the substantive issues presented on this appeal, it is necessary to understand the unusual procedural path this case followed. The defendants answered the complaint with a motion to dismiss pursuant to CPLR 3211 (a) (7). Insofar as relevant to the first two causes of action, the defendants argued that the plaintiff had no private right of action for the alleged violation of CPLR 4505 which they regarded as a mere rule of evidence. The plaintiff opposed this motion, characterizing her first two causes of action as alleging an actionable "breach of fiduciary duty arising from the breach of the clergy-penitent privilege." In the alternative, the plaintiff

pointed to the numerous cases recognizing the existence of private rights of action against health care and other professionals for violating analogous confidentiality statutes, and argued that her claims against the rabbis were similarly cognizable.

By order dated November 7, 1997, the Supreme Court notified the parties that it was converting the defendants' motion to dismiss into one for summary judgment pursuant to CPLR 3211 (c). The Supreme Court directed the parties to submit affidavits or other probative evidence within 30 days, or pursuant to a schedule to be set by the parties. The parties opted to submit their affirmations according to an agreed-upon schedule. The defendant rabbis each submitted affirmations on or about December 22, 1997. Among other things, the rabbis claimed, for the very first time, that they were obligated under Jewish law to reveal to Dr. Lightman the plaintiff's confessed failure to engage in monthly purification rituals. The rabbis asserted that they were required to warn Dr. Lightman thereof to ensure his compliance with religious strictures. They also claimed that their disclosures via the affirmations they submitted in the divorce action were necessary to protect the religious upbringing of the Lightman children. They further denied having disclosed the confidences to anyone else.

When the plaintiff attempted to serve her affirmation dated December 29, 1997, the defense counsel rejected it as untimely. As his letter dated January 5, 1998, explained, the parties understood that upon the conversion of the motion from one to dismiss to one for summary judgment, "there was to be a simultaneous exchange of affidavits with no right of reply," and "the motion for summary judgment was fully submitted for decision on December 22, 1997."

The parties subsequently agreed to extend the date for full submission of papers beyond December 22, 1997. The plaintiff submitted an affirmation dated February 3, 1998, in addition to that dated December 29, 1997, and the defendant rabbis each submitted additional affirmations dated February 5, 1998. The plaintiff's affirmation of December 29, 1997, disputed the defendants' claims that they were obligated, under Jewish law, to make the disclosures to Dr. Lightman or the divorce court. Her affirmation dated February 3, 1998, disputed the rabbis' claims that they had not revealed her confidences except to Dr. Lightman and in the matrimonial action, and she named other individuals with whom she alleged the defendants had shared her confidences.

The defendants' affirmations dated February 5, 1998, were

the final papers submitted on the motion. Therein, the defendants each claimed, Rabbi Weinberger for the very first time, that a third person had accompanied the plaintiff when she imparted her confidences. The defendant Flaum asserted that the plaintiff had been accompanied by her mother when she spoke to him, while the defendant Weinberger averred that a friend had accompanied the plaintiff "on more than one occasion" when she spoke to him. Thereafter, the case apparently was dormant for several months due to the plaintiff's substitution of counsel.

The Supreme Court issued an order dated November 18, 1998, in which it held that the disclosures by the defendants were actionable. The court granted partial summary judgment to the plaintiff on the issue of liability as against the defendant Weinberger for the breach of fiduciary duty of confidentiality, but denied partial summary judgment on this issue as against the defendant Flaum, holding a disposition as to him in abeyance pending an immediate trial on the factual issue of whether a third party was present at the time of the alleged confidential communication to that defendant.

However, as the Supreme Court would later reveal, it had not considered the plaintiff's affirmations of December 29, 1997, and February 3, 1998, nor had it considered the rabbis' affirmations of February 5, 1998, in rendering its decision and order of November 18, 1998. Accordingly, to resolve the confusion concerning the state of the record, the parties subsequently entered into a stipulation on January 12, 1999, pursuant to which, *inter alia*, the November 18, 1998, decision and order was recalled, and the parties and the Supreme Court agreed that a new order would be issued upon its consideration of all of the affirmations submitted.

Consistent with the above, on or about March 4, 1999, the Supreme Court issued an order formally recalling and vacating the November 18, 1998, order. On that same date, the Supreme Court issued the order now on appeal, which, *inter alia*, stated: "Accordingly, upon the foregoing, the motion to dismiss or for summary judgment as to the first and second causes of action for breach of the fiduciary duty of confidentiality is granted in terms of liability only to the extent of limiting, clarifying and defining the factual issues for trial, namely, whether the privilege had been waived by the presence of a third person, and whether the nature of the meeting was such that the communications and disclosures were made to the Rabbis in their spiritual capacity or to obtain spiritual guidance, and is otherwise denied" (*Lightman v Flaum*, 179 Misc 2d 1007, 1018).

While the Supreme Court's precise holding is less than crystal clear from the foregoing, it is apparent that it intended to sustain the plaintiff's first two causes of action alleging breaches of the defendants' respective fiduciary duties of confidentiality, subject to the defendants sustaining their burden of proving their defenses. Thus, in effect, the Supreme Court denied that branch of the defendants' motion which was for summary judgment dismissing the first and second causes of action inasmuch as it referred several factual issues for an immediate trial that still has not taken place. In any event, the Supreme Court found that the defendants' respective violations of the clergy-penitent privilege provided by CPLR 4505 afforded the plaintiff cognizable causes of action for breach of the fiduciary duty of confidentiality and that, since no First Amendment violation resulted from the enforcement of the clergy-penitent privilege, the rabbis would not be shielded from liability in tort.

## III

In my view, the majority has deprived the plaintiff of her entitlement to a determination of the substantial issues vigorously contested both before the Supreme Court and on appeal. The majority's reasoning that the plaintiff failed to demonstrate a triable issue of fact with respect to whether she waived her clergy-penitent privilege is simply not supportable for several reasons.

First, and perhaps most significantly, the majority's conclusion that the plaintiff waived her clergy-penitent privilege *by failing to controvert the defendants' claims regarding the presence of third parties*, is based upon a theory that was never advanced at any stage of the litigation by any of the parties. It is entirely unpreserved. It was not advanced by the defendants before Justice Goldstein in the Supreme Court, nor raised in their appellate briefs, nor mentioned in oral argument. Indeed, in contrast to the majority's finding that no issues of fact survived the parties' affirmations, the defendants' counsel expressly acknowledged to Justice Goldstein during the parties' on-the-record stipulation discussions that "your decision is going to be, in essence, a denial of our motion to dismiss, and whatever happens with regard to summary judgment, you will treat that *there is going to be a fact issue*." Clearly, the majority's conclusion that the plaintiff failed to demonstrate the existence of issues of fact to withstand the defendants' summary judgment motion is based upon a theory completely unanticipated by the parties. Nor is there any rationale to

justify the majority reaching this in its interest of justice jurisdiction. On the contrary, justice requires that the plaintiff be afforded her day in court.

Second, the majority's reasoning is flawed in that it fails to recognize that under the unusual procedural circumstances of this case, where there was to be a *simultaneous* exchange of affirmations. The plaintiff was precluded from responding to the defendants' last submissions. As noted, the allegations of the defendants identifying the third parties allegedly present were advanced by the rabbis in the very last papers submitted on the motion. As per the stipulation of the parties, there was to be *"no right of reply."* Against this procedural backdrop, it is blatantly improper for this Court to find that the defendants are entitled to summary judgment. It is simply not permissible for the defendants "to shift to [the] plaintiff * * * the burden to demonstrate a material issue of fact at a time when [the] plaintiff has neither the obligation nor opportunity to respond absent express leave of court" (*Lumbermen's Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624, 625). Thus, for this reason as well, it is improper to award summary judgment to the defendants on the issue of waiver.

Third, the majority ignores the assertion in the plaintiff's December 29, 1997, affirmation that she "saw Rabbi Flaum privately," and the assertions in her December 19, 1997, affirmation that she expected her communications with both rabbis to remain confidential.

Fourth, the defendants failed to establish that third parties were present at *all* pertinent times that disclosures were made. Rabbi Weinberger conclusorily asserted that "[o]n more than one occasion, Mrs. Lightman appeared for her meeting with her friend * * * who was a member of my congregation." Notably, Rabbi Weinberger did not allege that the friend was present on *every* occasion that the plaintiff spoke with him, nor did he allege that all confidential disclosures were made in the presence of the friend. Because this was a non-issue to the parties, and because of the simultaneous exchange of affidavits, the plaintiff had no opportunity to provide more specific details. Nevertheless, the majority has explicitly concluded that the plaintiff's friend was present at all pertinent times when confidential matters were discussed and that such third-party presence, as a matter of law, resulted in a waiver of the privilege. Clearly no such conclusion is borne out by the record. At a minimum, these conflicting factual assertions clearly give rise to the existence of issues of fact precluding any award of summary judgment (*see, Walker v Mount Vernon Hosp.*, 272

AD2d 468; *Gleeson-Casey v Otis El. Co.,* 268 AD2d 406; *Boyd v Trent,* 262 AD2d 260; *M. Sobol, Inc. v Goldman,* 259 AD2d 526; *Sayers v Albicocco,* 256 AD2d 323).

Fifth, and of critical importance, even assuming that the plaintiff did bring her mother or her friend to all of the meetings with the defendants and that these third parties were present when the relevant confidences were revealed, it *still* would not be dispositive on the issue of waiver. Although the general rule is that the presence of a third party when an otherwise confidential communication is made results in a waiver of the privilege, exceptions exist; if the communication was intended to be confidential, the fact that a third person was present does not necessarily destroy the privilege.

Generally, the Court of Appeals has recognized: "The true test [of determining whether a waiver has occurred] appears to be whether in the light of all the surrounding circumstances, and particularly the occasion for the presence of the third person, the communication was intended to be confidential and complied with the other provisions of the statute." (*People v Decina,* 2 NY2d 133, 145; *see also, People v Osorio,* 75 NY2d 80). The Appellate Division, First Department, had an opportunity to apply this rule in a case that is materially analogous to the instant case.

In *Stroh v General Motors Corp.* (213 AD2d 267), a Mrs. Maycheck lost control of her car in Washington Square Park and injured numerous pedestrians. She was sued by at least 12 parties, along with General Motors, the manufacturer of the car. The attorneys for General Motors sought to elicit details about Mrs. Maycheck's discussions with her attorneys, arguing that the presence of Mrs. Maycheck's daughter during the attorney-client discussions resulted in a waiver of the privilege that would otherwise attach to these communications. The Appellate Division, First Department, rejected this waiver argument, acknowledging that the 76-year-old driver was entitled to the moral support of her daughter, concerning this most traumatic event, without having waived the privilege. The Court analogized this situation to the many cases holding that the presence of a party's agent during attorney-client discussions will generally not be held to have destroyed the privilege. The Court noted: "Generally, the circumstances of each case will determine whether a communication by a client to an attorney should be afforded the cloak of privilege (*Matter of Jacqueline F.,* 47 NY2d 215, 222)" (*Stroh v General Motors Corp., supra,* at 268).

In the instant case, the plaintiff was involved in a conten-

tious and emotionally draining marital break-up. She allegedly sought counseling from her rabbis. Even assuming that the defendants conclusively established that the plaintiff was accompanied by her mother or her friend on some of these occasions, as in *Stroh*, certainly her choice to have a close relative or friend to accompany her for emotional support in this time of marital discord did not, de facto, constitute a waiver of the clergy-penitent privilege. Therefore, even if the plaintiff had failed to refute the specific allegations made by the defendant rabbis in their February 5, 1998, affirmations, a factual issue still remains as to whether she was in fact accompanied by a third person at all relevant times, and if so, whether under the circumstances she intended that the communications still would remain confidential. Accordingly, on this record, the disputed factual issue of whether the plaintiff waived the privilege cannot be determined as a matter of law. Simply stated, under no reasonable view of the record can it be concluded that the defendants established, as a matter of law, that the plaintiff intentionally waived the confidentiality privilege by bringing third parties to her meetings with the defendant rabbis.

## IV

Although the majority's conclusion that the plaintiff waived her privilege as a matter of law requires them to go no further, my disagreement with their conclusion as to that issue necessitates a discussion of two other significant issues to reach what I consider to be the appropriate disposition of this appeal.

The defendants *have* seriously argued, from the start, that CPLR 4505 is a mere rule of evidence, and that a violation thereof is not actionable. While apparently no court in this State has sanctioned an action for a breach of this statute, it is clear that the law of New York does permit redress for breaches of confidence such as occurred herein.

In pertinent part, CPLR 4505 provides that "[u]nless the person confessing or confiding waives the privilege, a clergy[member] or other minister of any religion * * * shall not be allowed [to] disclose a confession or confidence made to him [or her] in his [or her] professional character as a spiritual advisor." While this statute had its origins in the Roman Catholic sacrament of Penance, it is nevertheless applicable to all clergy members as it "recognizes the societal value of encouraging communications" with the clergy for spiritual advice (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4505, at 683). It should be liberally construed to carry out the policy behind it (*see, People v Sinski*, 88 NY2d 487 [liberally construing physician-patient privilege]).

The clergy-penitent privilege is purely a creation of statute; it was unknown at common-law (*see, Matter of Keenan v Gigante,* 47 NY2d 160, *cert denied* 444 US 887). The CPLR also contains other analogous privileges that protect communications between, *inter alia,* attorneys and clients (*see,* CPLR 4503), physicians and patients (*see,* CPLR 4504), psychologists and clients (*see,* CPLR 4507), and social workers and clients (*see,* CPLR 4508). The physician-patient privilege, among others, was also unknown at common-law (*see, Dillenbeck v Hess,* 73 NY2d 278). While courts from time to time have disagreed as to the reasoning, it is nevertheless well settled that the law recognizes the existence of a private right of action for damages for the benefit of a client or patient whose confidences have been betrayed by a health care professional (*see, Doe v Community Health Plan-Kaiser Corp.,* 268 AD2d 183; *Harley v Druzba,* 169 AD2d 1001; *Oringer v Rotkin,* 162 AD2d 113; *Tighe v Ginsberg,* 146 AD2d 268; *MacDonald v Clinger,* 84 AD2d 482). Such claims are generally sustained on a theory that the violation of the confidence constitutes a breach of a fiduciary or contractual duty (*see, Madden v Creative Servs.,* 84 NY2d 738).

I need not repeat the reasoning expressed in my dissent in *Langford v Roman Catholic Diocese* (271 AD2d 494) concerning the availability of a cause of action for breach of fiduciary duty against a member of the clergy. In any event, the holding of *Langford* is not dispositive of the issues raised in the matter at bar. The instant plaintiff alleges discreet, intentional acts, absolutely prohibited by a clearly-worded statute. In *Langford,* the plaintiff asserted common-law fiduciary claims predicated upon her priest's violations of his duties of trust and confidence and his abuse of power, by seducing her as she came to him for counsel and solace. Characterizing Ms. Langford's causes of action as alleging clergy malpractice, the majority therein affirmed the dismissal of the complaint finding that inquiry into the parties' relationship would require the Court to " 'venture into forbidden ecclesiastical terrain' " (*Langford v Roman Catholic Diocese, supra,* at 495). In the instant matter, certainly a determination of whether the defendant rabbis violated CPLR 4505 raises no similar concerns. Moreover, the defendant rabbis' alleged violations were admittedly intentional. The *Langford* majority did not dismiss the plaintiff's intentional tort claims on constitutional grounds, but solely on grounds of untimeliness. Thus, since *Langford* does not immunize the clergy from liability for intentional torts, it has no bearing on the defendant rabbis' alleged intentional acts in this case.

## V

The other contention seriously advanced by the defendants

is that they may not be held liable for fiduciary breaches flowing from their violation of the clergy-penitent privilege because they made their disclosures pursuant to Jewish law. As explained by the defendant Flaum in his affirmation of December 22, 1997, insofar as the plaintiff allegedly admitted "seeing men socially outside the marriage" and "that she had stopped engaging in religious purification laws," he was affirmatively obligated, as a rabbi, to apprise Dr. Lightman thereof "to prevent [Dr. Lightman] from violating Torah Law." In essence, the defendants contend that notwithstanding the secular command of CPLR 4505 that "thou shalt not tell," in light of the nature of the confidences allegedly revealed by the plaintiff, Jewish law issued a contrary and overriding command that "thou shalt tell" (cf., *Kruglikov v Kruglikov,* 29 Misc 2d 17 [wherein the New York Board of Rabbis opined that " 'any confidence reposed in [a rabbi] by [a] husband or wife * * * who has come to him for counseling [may] not be divulged' "]).

Courts have long struggled with issues of religious freedom and State regulation thereof. Prior to any discussion of that weighty issue, it is apparent that, as a matter of indisputable fact, the defendant rabbis' claimed justifications for revealing the plaintiff's confidences to her husband are no more than transparent contrivances and red herrings.

Both of the defendants asserted in their affirmations in the matrimonial action that the plaintiff admitted that she had abstained from religious purification (mikva), so she did not have to engage in sexual relations with her husband, and they needed to warn Dr. Lightman to protect him. However, in his December 22, 1997, affirmation in support of the motion to dismiss, Rabbi Flaum averred "[m]ore than two years ago, Dr. Lightman told me that he and his wife were experiencing marital difficulties. He said that his wife was deviating from the laws and traditions of Orthodox Judaism and that he thought she was engaging in adulterous relationships." Furthermore, Rabbi Flaum averred that the plaintiff had told him that she had stopped engaging in religious purification "which resulted in the cessation of all sexual activity with her husband." Thus, by Rabbi Flaum's own admissions, Dr. Lightman *knew* that his wife was eschewing Orthodox rituals, he *believed* that she was having an affair, and *all sexual relations had ceased.* This set of facts clearly negates Rabbi Flaum's avowed need to reveal these matters to Dr. Lightman "to prevent him from violating Torah Law": Dr. Lightman *already knew what was going on.* From this perspective, Rabbi Flaum's intentionally destructive

and arguably malicious revelations to Dr. Lightman were purely gratuitous and wholly unjustified under any circumstances (*see,* Miller, *Silence is Golden: Clergy Confidence and the Interaction Between Statutes and Caselaw,* 22 Am J Trial Advocacy 31, 66 quoting Leviticus 19:16: "Thou Shalt not go up and down as a talebearer among thy people"). The defendant Rabbi Weinberger made identical assertions in his affirmation of December 22, 1997, which are similarly unjustified.

In criminal cases we have held that police testimony in suppression hearings should not be credited where it has obviously been fabricated and tailored to overcome legitimate constitutional objections (*see, People v Lewis,* 195 AD2d 523; *People v Lebron,* 184 AD2d 784; *People v Miret-Gonzalez,* 159 AD2d 647; *see also, Matter of Bernice J.,* 248 AD2d 538; *Matter of Carl W.,* 174 AD2d 678 [the latter two cases applying the above stated rule in juvenile delinquency proceedings]). In this case, the defendant rabbis have presented the converse of that argument. They have affirmatively tailored their affirmations so as to *create* constitutional objections to shield them from liability. However, their objections are transparent and unpersuasive on the facts of this case, and thus provide them no protection under the First Amendment.

The defendants' revelations via their affirmations in the matrimonial action were gratuitous and unwarranted for the same reasons. Even assuming that the plaintiff's eschewal of the mikva or other alleged transgressions from Orthodoxy posed any genuine threat to the well-being of the children, such that it would be relevant on the issue of temporary custody, Dr. Lightman was certainly able to oppose the plaintiff's pendente lite application by raising these very same assertions from his personal knowledge. Whether or not the defendants' superfluous, derogatory affirmations had been "bought" by Dr. Lightman's "largess" and generous financial contributions as a transparent effort to embarrass the plaintiff as she alleged, it is nonetheless clear that they were duplicative, cumulative, and obviously unnecessary for the court's determination of the temporary custody issue. Once again, on the facts of this case, the defendants' "free exercise" justification defense is conclusory, illusory, and unconvincing.

Furthermore, insofar as the plaintiff is seeking to recover damages for the fiduciary breach that resulted from the defendants' intentional violations of CPLR 4505, I am persuaded that this statute does not place undue burdens on their free exercise rights. The concept of the separation of church and state is deeply imbedded in our law. The First Amendment

to the United States Constitution commands, in relevant part: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." The concept of "free exercise" is made up of two component parts; "freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society" (*Cantwell v Connecticut,* 310 US 296, 303-304).

Where deemed appropriate and necessary, secular courts may resolve disputes involving religious issues (*see, Employment Div. v Smith,* 494 US 872; *First Presbyt. Church v United Presbyt. Church,* 62 NY2d 110, *cert denied* 469 US 1037; *Avitzur v Avitzur,* 58 NY2d 108, *cert denied* 464 US 817; *Sieger v Union of Orthodox Rabbis,* NYLJ, Feb. 15, 2000, at 28, col 6). Statutes impacting upon religious practices may be upheld because of the existence of a compelling State interest which justifies burdening the free exercise of religion (*see, Sherbert v Verner,* 374 US 398). In the alternative, more recently, the Supreme Court concluded that where a statute is a neutral law of general applicability and prohibiting the exercise of religion is not its object but only an incidental effect, the First Amendment is not offended (*see, Employment Div. v Smith, supra*; *see also, Matter of New York State Empl. Relations Bd. v Christ the King Regional High School,* 90 NY2d 244, 248; *Matter of Miller,* 252 AD2d 156).

Applying either analysis, CPLR 4505 passes muster. It is a neutral law of general applicability, applied without distinction to all members of the clergy of all faiths and on behalf of all whom confide therein. Statutory violations may easily be determined pursuant to neutral principles of law rather than religious doctrine.

The compelling State interest underlying the enactment of CPLR 4505 has been noted by the Court of Appeals: "It is clear that the Legislature by enacting CPLR 4505 and its predecessors responded to the urgent need of people to confide in, without fear of reprisal, those entrusted with the pressing task of offering spiritual guidance so that harmony with one's self and others can be realized" (*Matter of Keenan v Gigante,* 47 NY2d 160, 166, *cert denied* 444 US 887, *supra*). The defendant rabbis' challenge, if successful, would destroy the compelling interests served by the clergy-penitent privilege, as well as the viability of all evidentiary privileges within CPLR article 45. Any individual holding similar religious beliefs, purportedly requiring revelation of confidential communications, could similarly defy the protections afforded under all other statu-

tory confidences. Any individual, be it a lawyer, a doctor, or other relevant health care professional holding the same religious convictions, would be free to divulge confidences in the name of his or her religion. No privilege could withstand religious challenge.

Indeed, we are not even required in this case to weigh the compelling State interest in preserving privileged communications against the potential, limited intrusion on the confessee's religious beliefs, since the clergy can easily protect itself against such conflict by simply warning parishioners that their confidences may have to be divulged, thereby alerting them to seek other safer havens.

In short, the case before us illustrates the correctness of Justice Scalia's observations in *Employment Div. v Smith* (494 US 872, *supra*), that "an individual's religious beliefs [do not] excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate" (*supra*, at 878-879). To conclude otherwise " 'would be to make the professed doctrines of religious belief superior to the law of the land, and in effect, to permit every citizen to become a law unto himself' " (*Employment Div. v Smith, supra*, at 879, quoting *Reynolds v United States,* 98 US 145, 166-167). As such, under the facts at bar, the defendants do not mount a colorable free exercise challenge.

## VI

As the foregoing has demonstrated, subject to the defendants establishing their factual defenses at trial that the plaintiff waived her clergy-penitent privilege, the defendants had no legitimate business betraying her alleged confidences. Furthermore, the defendants' statutory breaches are actionable as they simultaneously constitute cognizable fiduciary violations. Finally, the defendants' religious justifications and constitutional objections are wholly specious. Accordingly, I would affirm so much of the order appealed from as upheld the plaintiff's first and second causes of action for breach of fiduciary duty, subject to the defendants proving their defenses at trial. (*See, Lightman v Flaum,* 179 Misc 2d 1007.)