CHARLES F. MERONI, JR., Individually and as Administrator of the Estate of CHARLES T. MERONI, Deceased, Respondent, v HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY, Appellant, et al., Defendant.

Second Department, September 2, 1986

APPEARANCES OF COUNSEL

*Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C.,* and *Levy, Gutman, Goldberg & Kaplan (Eric M. Lieberman* and *Terry Gross* of counsel), for appellant.

*Joseph A. Tracy* for respondent.

**OPINION OF THE COURT**

NIEHOFF, J.

In October 1977 the plaintiff's son, Charles, who was at that time a student at Columbia University, entered a training program for membership in the Holy Spirit Association for the Unification of World Christianity, also known as the

Unification Church. Within a month, the plaintiff's son left the program and eventually returned home, where he remained until January 9, 1978, when he took his own life.

The plaintiff, believing that the Unification Church and the Collegiate Association for the Research of Principles, also known as C.A.R.P., the church's alleged recruiter, were responsible for his son's suicide, instituted this action.

All causes of action against C.A.R.P. were dismissed on or about October 7, 1981, and those causes of action are not in issue on this appeal. Our concern on this appeal is with the causes of action pleaded against the Unification Church.

The amended complaint, which is the subject of this appeal, pleads four causes of action against the Unification Church.

In his first cause of action, the plaintiff alleges a claim for intentional infliction of emotional distress on behalf of his deceased son's estate. The second cause of action alleges a claim for wrongful death, also on behalf of the decedent's estate. The complaint also asserts causes of action on the plaintiff's own behalf to recover damages for intentional infliction of emotional distress, and to recover damages for wrongful death.

Special Term (125 Misc 2d 1061) dismissed the plaintiff's cause of action to recover damages for intentional infliction of emotional distress on his own behalf. However, the court denied those branches of the appellant's motion which were to dismiss the three remaining causes of action against the Unification Church.

■■ For the reasons that follow, the appellant's motion to dismiss should have been granted in its entirety, and the plaintiff's amended complaint dismissed insofar as it is asserted against the appellant.

■ Our Court of Appeals recently "concluded that the Unification Church has religion as its 'primary' purpose inasmuch as much of its doctrine, dogmas, and teachings and a significant part of its activities are recognized as religious" *(Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn.,* 55 NY2d 512, 518). That being so, the US Constitution 1st Amendment prohibits the courts of this State from evaluating the Unification Church's religious beliefs *(Serbian Orthodox Diocese v Milivojevich,* 426 US 696, 713, *reh denied* 429 US 873). Stated otherwise, it is not for us to approve or disapprove of the church's beliefs.

However, although it is well established that freedom of

religious belief is absolute, freedom to act, even in the name of religion "remains subject to regulation for the protection of society" *(Cantwell v Connecticut,* 310 US 296, 304; *Reynolds v United States,* 98 US 145, 166-167; *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld,* 91 AD2d 190, 197, *appeal denied* 63 NY2d 603). Thus, a church may be held liable for intentional tortious conduct on behalf of its officers or members, even if that conduct is carried out as part of the church's religious practices *(Turner v Unification Church,* 473 F Supp 367, 371-372, *affd* 602 F2d 458; *Van Schaick v Church of Scientology,* 535 F Supp 1125, 1134).

With that principle in mind, the plaintiff claims that the Unification Church committed the tort of intentional infliction of severe emotional distress upon his son. In *Fischer v Maloney* (43 NY2d 553, 557), the Court of Appeals described that tort as follows: "An action may lie for intentional infliction of severe emotional distress 'for conduct exceeding all bounds usually tolerated by decent society' (Prosser, Torts [4th ed], § 12, p 56). The rule is stated in the Restatement, Torts 2d, as follows: 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress' (§ 46, subd [1]; see for one aspect Comment *d:* 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community')".

In evaluating the plaintiff's amended complaint to determine whether it states a cause of action for intentional infliction of emotional distress, "the court must assume that its allegations are true *(Denihan Enterprises v O'Dwyer,* 302 NY 451, 458), and must deem the complaint to allege whatever can be imputed from its statements by fair and reasonable intendment * * * The test of the sufficiency of a complaint is whether it gives sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and whether the requisite elements of any cause of action known to our law can be discerned from its averments" *(Pace v Perk,* 81 AD2d 444, 449). In considering the sufficiency of the challenged causes of action, the bill of particulars is also to be taken into account *(Nader v General Motors Corp.,* 25 NY2d 560, 565).

Although we sympathize with the plaintiff for the loss of his son, we find that his amended complaint, together with his

bill of particulars, as a matter of law, fail to allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community *(Fischer v Maloney, supra,* at p 557).

In his amended complaint, the plaintiff alleges that the defendant Unification Church subjected the decedent to "highly programmed behavioral control techniques in a controlled environment thereby narrowing his attention and causing him to go into a trance. He was subjected to an intense fasting from foods and beverages, a program of chanting and related activities". The plaintiff further alleges that the defendant church sought and succeeded in exercising a "form of hypnotic control, sometimes called 'brainwashing' ". The plaintiff claims that as a direct result of this "intensive program", the decedent suffered an "emotional breakdown".

The bill of particulars further describes the "intensive, heavy and protracted" program of exercises as including long hikes and group exercises. The form of information control exercised over the decedent consisted of isolating the decedent from "all information about himself or others which would cause him to question the activities of the Unification Church. This would include access to printed, aural and visual media, access to any area or people outside the training camp, and limited or monitored access to friends and family through telephone calls". The plaintiff's bill of particulars also makes reference to confessions, lectures, and highly structured work and study schedules.

The amended complaint also alleges that an affiliate member of C.A.R.P., with the knowledge and consent of the officers and directors of C.A.R.P., purposefully set out to recruit the decedent to become a member and employee of the Unification Church knowing that he was at that time "emotionally disturbed". The bill of particulars describes the "emotional disturbance" from which the decedent was suffering as "confusion and depression".

As we have stated earlier, the United States Constitution guarantees that a church may practice its religious beliefs without judicial interference, provided, of course, that in so doing it does not commit tortious conduct. From the record before us, it is clear that one of the beliefs of the Unification Church is that its recruits should undergo a vigorous program of physical and mental training. Assuming all of the allega-

tions in the plaintiff's complaint and bill of particulars to be true, the conduct of the Unification Church described therein, which the church utilizes in carrying out that belief, does not give rise to liability for intentional infliction of emotional distress.

The conduct of the defendant Unification Church as described in the plaintiff's amended complaint and bill of particulars, which the plaintiff seeks to classify as tortious, constitutes common and accepted religious proselytizing practices, e.g., fasting, chanting, physical exercises, cloistered living, confessions, lectures, and a highly structured work and study schedule. To the extent that the plaintiff alleges that the decedent was "brainwashed" as a result of the church's program, this claim must be viewed in the context of the situation as a whole, i.e., as a method of religious indoctrination that is neither extreme nor outrageous when it is considered that the subjects of the so-called "brainwashing" are voluntarily participating in the program, and the various activities mentioned above, which allegedly induced the "mind control", are not considered by our society to be beyond all possible bounds of decency.

In his memorandum of law in opposition to the appellant's motion to dismiss the amended complaint, the plaintiff claims that the Unification Church knew that the decedent was "emotionally disturbed" and "susceptible to forced employment" when he was recruited into the program. As noted earlier, in his bill of particulars, the plaintiff described the decedent's "emotional disturbance" as "confusion and depression".

This fact does not make the proselytizing conduct of the appellant any more extreme or outrageous, for it is not uncommon for those who are confused and depressed to seek guidance from a religion, and to submit themselves to the dictates of that religion in an effort to solve their problems.

The plaintiff has failed to demonstrate that the recruitment and indoctrination techniques used by the appellant, which are similar to those used by a number of other organizations " 'go beyond all possible bounds of decency, and [are] to be regarded as atrocious, and utterly intolerable in a civilized community' " (Fischer v Maloney, supra, at p 557).

It is important to note that no facts are set forth which would warrant the conclusion that the plaintiff's decedent was falsely imprisoned by the appellant or that he was subjected

to any form of violence, or physical or mental torture, as such. The claim of brainwashing is based upon the activities heretofore described, which, as previously noted, are commonly used by religious and other groups, and are accepted by society as legitimate means of indoctrination. They are not classifiable as so extreme or outrageous, or offensive to society, as to incur liability therefor.

In *Molko v Holy Spirit Assn.* (Cal Super Ct, San Francisco, Dept No. 3, Oct. 20, 1983, Pollack, J.), the California Superior Court was faced with a suit brought against the Unification Church by two young adults after they had terminated their relationship with the church. Their claims against the church were similar to those made by the plaintiff here. Summary judgment was granted to the defendant church dismissing the complaint. In granting such relief, the California court wrote:

"[A]n adult who is not shown to be gravely disabled must have the personal and individual right to determine for himself or herself whether to associate with a religious group. Despite the possibility of coercive persuasion, or brainwashing, 'the right of the individual to make such choices is so important that it cannot be removed absent a showing of grave disability * * * [Otherwise], in order to avoid potential liability, neither the Church nor any other association could ever rely upon a person's agreement to join, and the individual's ability to consent to join would be severely compromised' * * *

"What is 'systematic manipulation' [of social influences] to some may be the only true outlook to others" (slip opn, at pp 19-22).

Like the plaintiffs in the *Molko* case, the plaintiff's son, who was not gravely disabled, had the personal and individual right to determine for himself whether to associate with the defendant church, and neither he nor his distributees may recover damages because, in an effort to solve his emotional problems, he chose to subject himself to the church's discipline, which included accepted practices designed to persuade him to adopt the church's religious beliefs.

■ Regarding the plaintiff's causes of action to recover damages for wrongful death against the Unification Church, these too should be dismissed. A cause of action to recover damages for wrongful death may only be brought by the decedent's personal representative on behalf of all of the distributees of the decedent.

EPTL 5-4.1 (1) provides in relevant part that: "The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued * * * When the distributees do not participate in the administration of the decedent's estate under a will appointing an executor who refuses to bring such action, the distributees are entitled to have an administrator appointed to prosecute the action for their benefit".

By bringing the causes of action to recover damages for wrongful death on behalf of the decedent's estate, and on behalf of the plaintiff, individually, the plaintiff has failed to state a proper cause of action to recover damages for wrongful death. A cause of action to recover damages for wrongful death should be brought on behalf of the decedent's distributees.

Special Term inferred from the plaintiff's allegations that, since he was the administrator of his son's estate, and he was the father of the decedent, that "it is apparent" that the plaintiff is a distributee of the estate (125 Misc 2d 1061, 1065, *supra*). However, there is no specific allegation in the complaint that the plaintiff is a distributee *(see,* EPTL 4-1.1). Moreover, a wrongful death action in New York must be brought by the appointed personal representative on behalf of all of the distributees, not just a single distributee who comes forward and elects to commence an action on his own behalf.

What is more, both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent *(see,* EPTL 5-4.1, 11-3.2 [b]; *Chong v New York City Tr. Auth.,* 83 AD2d 546). In the case at bar, the underlying cause of action asserted by the plaintiff was to recover damages for intentional infliction of emotional distress. Since we have found that the plaintiff has failed to state a cause of action in that regard, it follows that the plaintiff cannot succeed on any claim of wrongful death.

For all of the above-stated reasons, we find that the plaintiff's amended complaint fails to state a cause of action against the Unification Church. Therefore, the order should be

reversed insofar as appealed from and the plaintiff's amended complaint dismissed in its entirety.

LAZER, J. P., THOMPSON and KUNZEMAN, JJ., concur.

Order of the Supreme Court, Westchester County, entered October 12, 1984, reversed insofar as appealed from, on the law, without costs or disbursements, and the appellant's motion to dismiss the amended complaint insofar as it is asserted against it granted in its entirety.