■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP DRELICH, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kooper, J.), rendered June 9, 1980, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

The defendant stands convicted of the brutal stabbing murder of his 23-year-old pregnant wife. He raises a number of contentions in support of his claim that his conviction must be set aside and a new trial ordered, the principal one of which concerns an alleged violation of his privilege under CPLR 4505 against disclosure of statements amounting to a confession made by him to Rabbi Moses David Tendler.

A hearing was held at Criminal Term at which both Rabbi Tendler and the defendant testified. The defendant claimed that he had spoken with Rabbi Tendler seeking counsel and spiritual advice while the rabbi, on the other hand, asserted that his role was strictly a secular one, in which the defendant sought his assistance and the benefits of his influence

and connections in securing an attorney and in negotiating a beneficial plea bargain agreement. According to Rabbi Tendler, he stressed many times to the defendant during their discussions that his role was not rabbinical in nature, and he indicated that he would not have involved himself in the matter in other than a secular role.

At the conclusion of the hearing, Criminal Term found that "the disclosures by the defendant were not made to Rabbi Tendler for the purpose of seeking religious counsel, advice, solace, absolution or ministration, but merely to induce the rabbi to render concrete assistance by way of intervention with others and obtaining an attorney, plea bargaining and raising funds". The court made particular note of the defendant's concession that he had sought out Rabbi Tendler in part because, as a prominent rabbi, he had "connections" in the secular world. The court also found it unlikely for the defendant to have held a reasonable belief that Rabbi Tendler was acting as his spiritual adviser and that their communications were confidential in light of the rabbi's repeatedly having stressed the fact that he was not acting as the defendant's spiritual adviser. Accordingly, Criminal Term denied the defendant's motion to bar Rabbi Tendler's testimony.

During the course of the trial Rabbi Tendler's role was again raised and the court reopened the hearing on the question of privilege to permit testimony by Murray Richman, the attorney whom Rabbi Tendler had contacted on the defendant's behalf. Richman testified that on at least three occasions the rabbi had told him that he had been giving spiritual solace to the defendant. However, Rabbi Tendler again was called to testify and he reiterated his prior statement that he had not rendered spiritual advice to the defendant. At the close of the hearing the court adhered to its earlier determination.

It is well recognized that no clergyman-penitent privilege existed at common law (*Matter of Keenan v Gigante,* 47 NY2d 160, *cert denied* 444 US 887; Richardson, Evidence § 424 [Prince 10th ed]), and that the privilege is purely a creature of statute in New York. CPLR 4505 provides that "[u]nless the person confessing or confiding waives the privilege, a clergyman, or other minister of any religion or duly accredited Christian Science practitioner, shall not be allowed to disclose a confession or confidence made to him in his professional character as spiritual advisor". It is clear, however, that not every communication made to a clergyman is entitled to the protection of the privilege (*Matter of Keenan v Gigante, supra;*

*Matter of Puglisi v Pignato,* 26 AD2d 817; *Matter of Fuhrer,* 100 Misc 2d 315; *United States v Wells,* 446 F2d 2). Rather, as the Court of Appeals has stated, "[t]here must be 'reason to believe that the information sought required the disclosure of information under the cloak of the confessional or was in any way confidential' for it is only confidential communications made to a clergyman in his spiritual capacity which the law endeavors to protect" *(Matter of Keenan v Gigante, supra,* at p 166, quoting from *Matter of Puglisi v Pignato, supra; see generally, Matters to which the Privilege Covering Communications to Clergyman or Spiritual Advisor Extends,* Ann., 71 ALR3d 794, 808-809). The burden rests upon the individual invoking the privilege to establish that the communication sought to be shielded was made for the purpose of seeking religious counsel *(see, Matter of Puglisi v Pignato, supra).*

In light of the applicable statutory and case law, and based upon our review of the evidence adduced at the hearing viewed in the light most favorable to the People, we are satisfied as to the correctness of the determination of Criminal Term. The defendant's communications to Rabbi Tendler were made for the secular purpose of seeking assistance in the retention of counsel, and in negotiating with the prosecutor's office and securing other assistance in connection with the preparation of his defense to the charges, and were not made by the defendant in confidence to Rabbi Tendler "in his professional character as spiritual advisor" (CPLR 4505). Accordingly, the communications were not privileged.

The defendant also challenges the denial of his motion to suppress certain statements made by him to the police during the course of their investigation into his wife's murder. At the time of the murder the defendant had retained counsel, apparently on an unrelated matter, and that attorney was present when the police came to question the defendant, at his home, on the day of the murder. Although he permitted the police to question the defendant that day, counsel specifically told the police that he did not want the defendant questioned thereafter in his absence. Nevertheless, the police did in fact subsequently question the defendant on several occasions without counsel's being present both after having obtained permission to do so from counsel over the telephone and also without having obtained such permission.

At the time of the suppression hearing, there was no requirement that the police obtain a waiver of the right to counsel in order to question a suspect in a noncustodial situation *(People v McKie,* 25 NY2d 19). Since the questioning

of the defendant at bar was clearly noncustodial in nature, the suppression hearing was limited to the issue of the voluntariness of the defendant's statements and did not address the issue of whether the defendant was questioned in the absence of counsel without first obtaining a valid waiver of his right to counsel in the presence of counsel. At the conclusion of the hearing, the court found that the defendant's statements were voluntarily made and denied suppression on that ground. Subsequently, however, the Court of Appeals ruled that when an individual is represented by counsel with regard to a matter under investigation and the police are aware of that representation, they may not question that person in the absence of counsel, regardless of whether the questioning is in a noncustodial setting, without first obtaining a valid waiver of the right to counsel in the presence of counsel *(People v Skinner,* 52 NY2d 24). As the People concede, this rule is applicable retroactively to cases such as this which are still in the appellate process *(People v Ellis,* 58 NY2d 748). We find, however, that both as to the statements which were made in the presence of counsel on the day of the murder, and as to those statements made after obtaining permission to speak to the defendant from his counsel over the telephone, that there was no violation of the rule set forth in *People v Skinner (supra).* In the latter case, the telephone contact with counsel satisfied the requirement that the waiver of the right to counsel be made after the defendant has had an opportunity to consult with his counsel *(see, People v Beam,* 57 NY2d 241, 254; *People v Yut Wai Tom,* 53 NY2d 44, 53-54). As to those statements which were made without first obtaining a valid waiver of the right to counsel, we find that any error in their admission into evidence was harmless since the substantive content of those statements was either duplicative of other statements made by the defendant which were properly admitted into evidence or cumulative of other properly received evidence *(see, People v Krom,* 61 NY2d 187, 201; *People v Flecha,* 60 NY2d 766; *People v Sanders,* 56 NY2d 51, 67).

The defendant raises a number of other issues regarding alleged errors in the trial court's charge, prosecutorial misconduct and a claimed abuse of discretion by Criminal Term in allowing a prostitute to testify as a prosecution witness with respect to her relationship with the defendant. We find these issues to be either unpreserved for review as a matter of law (CPL 470.05 [2]; *People v Vidal,* 26 NY2d 249; *People v Willis,* 107 AD2d 830), or without merit *(see, People v Shakoor,* 112 AD2d 258). Mangano, J. P., Brown, Weinstein and Spatt, JJ., concur.