OPINION OF THE COURT
David Goldstein, J.
ISSUE
This case presents an issue of first impression in this State, namely, whether the unauthorized disclosure of confidential communications, in violation of the clergy-penitent privilege provided by CPLR 4505, is actionable. The court concludes, as a matter of law, that breach of the fiduciary duty of confidentiality does state a cognizable claim for relief.
Defendants, Rabbi Tzvi Flaum and Rabbi David Weinberger, have moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action. In accordance with CPLR 3211 (c), this court notified the parties of its election to convert the motion to one for summary judgment and *1009 all parties were afforded an opportunity to and did make additional submissions.
FACTS
Plaintiff alleges that, in 1995, she sought religious counseling from each of the defendants, during which she revealed certain matters of an extremely personal and confidential nature. Rabbi Flaum is employed as Rabbi of Congregation Kneseth Israel, 728 Empire Avenue, Far Rockaway, New York. He is also Chairman of the Vaad Harabonim, the Rabbinical Council of Far Rockaway and Lawrence and Co-Chairman of the Vaad Harabonim of Queens. Rabbi Weinberger is employed as Rabbi of Temple Shaaray Tefila, 25 Central Avenue, Lawrence, New York. He was formerly Assistant Rabbi of Congregation Kneseth Israel and teaches at the Prospect Park High School and Seminary for Girls. Both plaintiff and her husband were members of Kneseth Israel and had also participated in services at Temple of Shaaray Tefila. According to plaintiff, she met with each Rabbi for advice and spiritual guidance and, in confidence, disclosed matters of a personal and intimate nature.
Subsequently, in February 1996, Mrs. Lightman commenced an action for divorce and moved for pendente lite relief, including temporary custody of the four children. In response, defendants submitted affirmations in support of the husband’s position as to custody, which set forth the confidential matters that plaintiff had previously communicated and imparted to them. Specifically, the affirmation of Rabbi Flaum contained the following:
“2. Mrs. Lightman admitted to me that she stopped engaging in our religious purification laws since September 1995 and hence, all sexual activity has stopped by her own decision.
“3. Mrs. Lightman admitted to me that she was seeing a man in a social setting and admitted, T am doing the wrong things.’ I spoke to her and counseled her against this in December, 1995.”
The affirmation of Rabbi Weinberger set forth the following:
“2. Mrs. Lightman admitted to me that she freely stopped her religious bathing so that * * * she did not have to engage in any sexual relations with Dr. Lightman.
“3. She told me she was not getting fulfillment when I inquired what that meant, she simply answered, he doesn’t relate to me. Nothing was stated that amounted to cruel conduct by Dr. Lightman.
*1010 “4. Her religious behavior has changed. She does not want to adhere to Jewish law despite the fact that she is an Orthodox Jew and her children are being raised Orthodox as well. She has engaged in bizarre behavior.
“5. I have no loyalty to either party except to state what I observed and to issue an opinion based on those observation [s] from a religious point of view.”
Based upon the foregoing allegations, plaintiff commenced this action for violation of the clergy-penitent privilege and for intentional infliction of emotional distress. In addition, the complaint asserts a cause of action against Rabbi Weinberger for defamation.
Upon a motion to dismiss pursuant to CPLR 3211 (a) (7), the court is required to construe the complaint liberally, accepting all of the facts alleged as true and affording plaintiff the benefit of any possible inference. (See, Leon v Martinez, 84 NY2d 83.) “[T]he criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one”. (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see also, Foley v D’Agostino, 21 AD2d 60, 65.) Upon a motion for summary judgment, it is incumbent upon the court to draw all reasonable inferences in favor of the nonmoving party and it may not pass upon issues of credibility. (See, Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439; 175 Check Cashing Corp. v Chubb Pac. Indem. Group, 95 AD2d 701.)
Upon the conversion of this motion to one for summary judgment, the parties submitted further affirmations. Essentially, plaintiff has reiterated the claims made in the complaint, alleging that it was both improper and actionable for defendants to divulge privileged and sensitive communications which they had received from her.
In opposition, defendants contend that they were compelled by Jewish law to reveal the confidences to plaintiff’s husband, his attorney and the court for the protection of both the husband and the children. Additionally, they argue that plaintiff was not seeking spiritual counseling or advice in what Rabbi Flaum describes as their “encounter” and both claim that a third person was present at the time: as to Flaum, plaintiff’s mother and, as to Weinberger, plaintiff’s friend, Yael Hirsh. According to Rabbi Weinberger, plaintiff described “the most intimate details of her marriage” in the presence of her friend, which surprised him. According to Rabbi Flaum, Dr. Lightman advised him that he and his wife were having marital problems — that she was deviating from Orthodox tradition *1011 and, he believed, was in “adulterous relationships”. Weeks later, plaintiff and her mother appeared at his office and berated him for speaking to Dr. Lightman. In the course of the heated exchange, plaintiff admitted “she had stopped engaging in religious purification laws” and was “seeing men in social settings even though she was still married to Dr. Lightman.” Both defendants admit notifying the husband and claim that, in doing so, they were acting in accordance with their obligation as Rabbi and spiritual advisor and, further, that this was to protect the four “innocent” children of the marriage.
Defendants argue that the causes of action for violation of the clergy-penitent privilege must be dismissed since no private cause of action exists. They claim that breach of the privilege is merely a violation of an evidentiary rule, and that the sole remedy is the exclusion of the communication from evidence.
DISCUSSION
(a) Fiduciary Duty of Confidentiality — Clergy-Penitent
Privilege
While it is true that a cause of action does not automatically exist for breach of an evidentiary rule, our courts have repeatedly recognized that violation of certain privileges does give rise to a common-law cause of action for breach of the fiduciary duty of confidentiality. (See, Oringer v Rotkin, 162 AD2d 113; cf., Madden v Creative Servs., 84 NY2d 738, 744.) Thus, a cause of action has been recognized for violation of the physician-patient privilege (see, Doe v Roe, 190 AD2d 463; Tighe v Ginsberg, 146 AD2d 268; see also, Anker v Brodnitz, 98 Misc 2d 148, 152-153, affd 73 AD2d 589, Iv dismissed 51 NY2d 703); the psychologist-patient privilege (Oringer v Rotkin, supra), the psychiatrist-patient privilege (MacDonald v Clinger, 84 AD2d 482); the social worker-client privilege (Harley v Druzba, 169 AD2d 1001; [as to scope of privilege in terms of confidentiality, generally, see also, People v Tissois, 72 NY2d 75; Community Serv. Socy. v Welfare Inspector Gen., 91 Misc 2d 383, affd 65 AD2d 734]); and the attorney-client privilege (Krouner v Koplovitz, 175 AD2d 531). Cognizable claims have been premised upon the breach of a fiduciary or contractual relationship.
Plaintiff acknowledges that an action for violation of the clergy-penitent privilege has not as yet been upheld and that the issue is one of first impression in this State and, as far as appears, in this country. However, by way of analogy to the *1012 foregoing privileges, she argues that the clergy has a similar fiduciary duty vis-a-vis the penitent and should be held to the same stringent standard of care as has been imposed upon other professionals, namely, to hold such disclosures sacred and not to reveal confidential communications.
Plaintiff points to the care and diligence by most responsible members of the clergy in safeguarding confidences, as the reason the issue in this case has never arisen. In fact, this court is aware of only one reported decision which squarely addressed the issue. In Snyder v Evangelical Orthodox Church (216 Cal App 3d 297, 264 Cal Rptr 640) plaintiffs had confessed their adulterous relationship to certain members of the clergy. Although made in confidence, the confession was disclosed to others, including the assembled congregation, the Church Board of Elders and a gathering of priests, ministers, pastors and guests. Plaintiffs asserted claims, inter alia, for breach of fiduciary duty and infliction of emotional distress. In moving to dismiss, defendants argued that the court lacked jurisdiction over conduct which was “ecclesiastical in nature”.
The California Court of Appeal for the Sixth District held that, under certain circumstances, tort liability could be imposed upon a member of the clergy for revealing confidences. In doing so, it recognized that whether to allow such a claim involved substantial constitutional considerations relating to the First Amendment to the United States Constitution, and held that various factors needed to be taken into account, including whether the acts complained of were taken pursuant to church doctrine and whether the State interest outweighed any concomitant burden on religion.
In Snyder (supra), a four-pronged balancing standard was set forth to determine whether there is a justifiable burden on expression of religious belief in relation to the effect upon significant societal interests. To do so, the government must be in furtherance of some compelling State interest; the burden on expression must be essential to further this interest; the type and level of the burden must be the minimum necessary to achieve the State interest; and the burden must apply to everyone, not merely to those who have a religious belief. In reversing the dismissal for lack of subject matter jurisdiction, the California appellate court remanded the matter for further proceedings, including a determination whether there actually was a religious purpose for the disclosure and, if it was concluded that the conduct qualified as religious expression, “the trial court must balance the importance to the state of the *1013 interest invaded against the burden which would result from imposing tort liability for such a claim.” (Snyder v Evangelical Orthodox Church, supra, 216 Cal App 3d, at 310, 264 Cal Rptr, at 647.)
Previously, in Wollersheim v Church of Scientology (212 Cal App 3d 872, 66 Cal Rptr 2d 1) the California Court of Appeal for the Second District applied the same balancing standard to uphold an action for intentional infliction of emotional distress, concluding in that case that there was a compelling State interest which far outweighed the values to be served by the alleged religious expression. In doing so, however, it observed that “not every religious expression is worthy of constitutional protection.” (Supra, 212 Cal App 3d, at 888, 66 Cal Rptr 2d, at 10.)
In Alexander v Culp (124 Ohio App 3d 13, 705 NE2d 378) plaintiff had met with defendant minister for marital counseling, whereupon he disclosed in confidence that he had several affairs during his marriage and was currently having an affair. Thereafter, Culp disclosed these confessions to plaintiff’s wife and, after opining that plaintiff was a liar and not to be trusted, suggested that the wife obtain a restraining order, change the locks on the doors and retain counsel to secure a divorce. Since plaintiff also stated he intended to take the children to another State, the minister suggested that she keep them away from their father. The Ohio appellate court found the factual allegations sufficient to state a viable claim for common-law negligence, observing: “Public policy supports an action for breach of confidentiality by a minister. There is a public policy in favor of encouraging a person to seek religious counseling. People expect their disclosures to clergy members to be kept confidential * * * Whether a particular case interferes with First Amendment freedoms can be determined on a case-by-case basis.” (Supra, 124 Ohio App 3d, at 19, 705 NE2d, at 382.) Although Ohio had a statute which prohibited the clergy from testifying as to confidences communicated during religious counseling, the provision had no application to any disclosure outside any legal proceeding. In holding that the facts set forth a cognizable claim for ordinary negligence, not malpractice, the Ohio court observed: “Although the duty not to disclose arose from the clergy/parishioner relationship, the breach of the duty to preserve appellant’s confidences neither involved nor compromised any religious tenets.” (Supra, 124 Ohio App 3d, at 19, 705 NE2d, at 382.)
In our case, defendants claim that to sustain a cause of action would impinge upon the free exercise of their religious *1014 rights, preserved by the First Amendment. Generally, cases have held that the imposition of liability in tort or otherwise, for conduct or activities of a religious society or its members, in furtherance of religious beliefs, is barred where the imposition of liability would result in the abridgement of the free exercise of religion, in violation of the First Amendment. (See, Wisconsin v Yoder, 406 US 205; see also, Serbian Orthodox Diocese v Milivojevich, 426 US 696; Paul v Watchtower Bible & Tract Socy., 819 F2d 875; Kenneth R. v Roman Catholic Diocese, 229 AD2d 159; Madsen v Erwin, 395 Mass 715, 481 NE2d 1160.) The same holds true where the court would be required to become excessively entangled with religious doctrine and its standards. (See, Schmidt v Bishop, 779 F Supp 321; see also, Langford v Roman Catholic Diocese, 177 Misc 2d 897.) In such instances, it has been recognized that a court must refrain from determining ecclesiastical questions. (See, Presbyterian Church v Hull Church, 393 US 440.)
However, it is also well recognized that disputes involving religious entities may be adjudicated if this may be done by applying “neutral principles of law” and without resolving or impinging upon underlying controversies over religious doctrine. (Presbyterian Church v Hull Church, supra; Park Slope Jewish Ctr. v Congregation B’Nai Jacob, 90 NY2d 517; First Presbyt. Church v United Presbyt. Church, 62 NY2d 110, 119-120; see also, Jones v Wolf, 443 US 595.) These and other cases hold that civil disputes involving religious institutions or persons may be addressed without offending constitutional restrictions, as long as neutral laws of general applicability are employed in the resolution or adjudication.
At the outset, it must be stressed that, while the First Amendment does prohibit the intrusion upon the exercise of religious beliefs, the conduct of a religious entity remains subject to regulation for the protection of society. (See, Employment Div., Ore. Dept. of Human Resources v Smith, 494 US 872; see also, Cantwell v Connecticut, 310 US 296, 304; Kenneth R. v Roman Catholic Diocese, supra.) This is especially so where the imposition of liability or sanctions for the conduct complained of is secular in nature, namely, where liability is imposed equally, for religious institutions and parties, as well as for others, and where the basis for such liability may be determined without examination into religious law or policies. (See, Employment Div., Ore. Dept. of Human Resources v Smith, supra; Jones v Trane, 153 Misc 2d 822; Moses v Diocese of Colorado, 863 P2d 310 [Colo].) Thus, the free exercise clause is not *1015 an absolute defense where, as here, liability for tortious conduct is sought to be imposed upon members of the clergy. It may only serve as a defense where the alleged tortious conduct was undertaken pursuant to religious principles or doctrine. (See, Kenneth R. v Roman Catholic Diocese, supra; Meroni v Holy Spirit Assn. for Unification of World Christianity, 119 AD2d 200; Jones v Trane, supra; Snyder v Evangelical Orthodox Church, supra; Madsen v Irwin, supra.)
Even where the conduct is predicated upon religious beliefs, it may nevertheless form the basis for liability where significant societal interests are involved. (See, Cantwell v Connecticut, supra; Meroni v Holy Spirit Assn. for Unification of World Christianity, supra.) Thus, it has been held that the intentional torts of the clergy may be actionable, notwithstanding the allegation that they are incidents of religious beliefs. (See, Meroni v Holy Spirit Assn. for Unification of World Christianity, supra; Hester v Barnett, 723 SW2d 544 [Mo]; Bear v Reformed Mennonite Church, 462 Pa 330, 341 A2d 105.) Other courts have sustained causes of action against religious organizations for negligent supervision and retention, upon the ground that a liability determination would not require examination of any religious doctrine, nor would it inhibit any religious practice. (See, Kenneth R. v Roman Catholic Diocese, supra; Jones v Trane, supra.) In such instances, the First Amendment will not serve as a defense because it is not implicated.
Based upon the foregoing legal principles, in determining whether the First Amendment is a viable defense, the threshold inquiry must be whether the complained of conduct is actually motivated by or involves religious practices or beliefs. (See, Wisconsin v Yoder, supra.) If it is not, liability may be imposed without raising any constitutional inhibition or restriction. In such case, plainly, there is no entanglement with religion.
Under the circumstances of this case, it is concluded that a valid cause of action does exist under CPLR 4505, for breach of the fiduciary duty of confidentiality, which arises from the violation of the clergy-penitent privilege. Absent any religious or First Amendment implication, there is no compelling reason here to shield these Rabbis from liability in tort for revealing such sensitive, personal communications, when other similarly situated professionals are subject to potential liability under statutory provisions analogous in scope and purpose to that at issue here.
It is beyond peradventure that, when one seeks the solace and spiritual advice and guidance of a member of the clergy, *1016 whether it be a priest, rabbi or minister, on such sensitive, personal matters as those involved in our case, this is not done as a prelude to an announcement from the pulpit. On this record, it is equally clear that these protectors of the faith, under the guise of religious necessity, the protection of the children and the sanctity of the marital institution, have taken upon themselves the disclosure to others of what, from its very nature and subject, was imparted in confidence, unless the privilege was waived by the presence of some third party or, from the nature of the meeting, the disclosure and communication was not made to the Rabbis in their spiritual capacity. (See, People v Drelich, 123 AD2d 441, 443.) And, not only were disclosures made to Dr. Lightman, both defendants readily acceded to his request that they be repeated to counsel and to the court in the matrimonial action, so as to influence the issue of temporary custody and/or visitation.
In my view, this was not only improper, it was outrageous and most offensive, especially considering the stature of these defendants within the community, a standard which they readily abdicated here. From what was done, it is palpably clear why this determination is one of apparent first impression — no member of the clergy, with the possible exception of Reverend Culp in Ohio (Alexander v Culp, 124 Ohio App 3d 13, 705 NE2d 378, supra), would dare breach the sanctity of his or her office to make public the type of confidential, private disclosures at issue in this case. And, while both profess that religious law “compelled” disclosure, to the contrary, both were bound by civil law, which mandated strict confidentiality. After all, the privilege belongs to the penitent, not the clergy, and must be honored.
Moreover, to violate such basic rights under the guise of religious necessity, conviction or the protection of the Torah is not only wrong, it is outrageous. Under the factual scenario admitted by these defendants, disclosure was not required to prevent Dr. Lightman from violating Jewish law or tradition. Both defendants knew that the couple was experiencing marital difficulties when they were told that plaintiff was no longer going to the Mikvah, the ritual bathing to purify the woman during her menstrual period. Clearly, this is a peculiarly sensitive matter, not readily discussed with others, nor in open, public exchanges. Notwithstanding that future marital relations would cause Dr. Lightman to violate Jewish law, neither defendant had a “religious obligation as a Rabbi” to make public what had been imparted to them. In lieu of such, all that *1017 they had to do was ask the husband whether, notwithstanding their marital difficulties, the parties were still having normal relations. If so or, in the alternative, without such an inquiry, defendants could have emphasized to the husband the importance of ensuring that his wife was still going to the Mikvah. This, however, was not done. Moreover, as is apparent from Rabbi Flaum’s affirmation of December 22, 1997, the disclosure was palpably unrelated to any religious doctrine, since what had been told to defendant was that “plaintiff admitted that she had stopped engaging in religious purification laws (which resulted in the cessation of all sexual activity with her husband)” (emphasis added). Thus, since he had been told there was no sexual relationship, there was no need for disclosure, especially under the pretext of preventing any violation of religious doctrine, unless this was to serve some other male, Orthodox, but equally irrelevant role.
Notwithstanding the foregoing, disclosure in this case hardly equates with the overwhelming public and societal interest in preserving the sanctity of such confidential communications. Plainly, there is no justification, religious or otherwise, for disclosing that plaintiff had been seeing men outside the marriage. The alleged negative impact upon the four children, in terms of “their level of religious observance as well as their general well being” (affirmation, Rabbi Flaum, dated Dec. 22, 1997), is so general that, in terms of importance, it cannot possibly measure against the overriding State and public interest in preserving confidentiality. The same holds true with respect to the alleged “religious obligation” to prevent the husband from having relations with a woman “who admittedly socialized with other men” or, in terms of the children, “to shield them from their mother’s improper conduct.” To acknowledge such would improperly and unwisely create a standard for these defendants, as Orthodox Rabbis, different from that followed by the rest of society.
Thus, it is readily apparent here that the disclosure, under the circumstances of this case, is actionable and would entitle plaintiff to prevail on liability, unless the privilege had been waived by the presence of a third person, or the nature of the meeting was such that the communication was not made to the Rabbis in their spiritual capacity or to obtain spiritual guidance. (People v Drelich, 123 AD2d 441, supra; see also, People v Carmona, 82 NY2d 603.) Plainly, these are factual issues, which must await the trier of the facts and are inappropriate for final resolution upon motion for summary judgment. As *1018 noted, inasmuch as neither defendant has identified any justifiable religious obligation or basis for revealing these communications, as a matter of law, the First Amendment is not a defense.
Equally without merit is the contention that, since the communications were revealed in the context of a judicial proceeding, they are entitled to protection. No authority or legal basis is offered to accord any degree of immunity for breach of fiduciary duty simply because it occurred in a judicial proceeding. While there is a valid basis for not permitting defamation claims to proceed and for immunity to be accorded defamatory statements made in the context of a judicial proceeding, those reasons are inapplicable here. If the privilege applies, plaintiff is entitled to confidentiality, whether it be in a sealed matrimonial proceeding or in a public or private forum. The privilege belongs to and may only be waived by her.
Accordingly, upon the foregoing, the motion to dismiss or for summary judgment as to the first and second causes of action for breach of the fiduciary duty of confidentiality is granted in terms of liability only to the extent of limiting, clarifying and defining the factual issues for trial, namely, whether the privilege had been waived by the presence of a third person, and whether the nature of the meeting was such that the communications and disclosures were made to the Rabbis in their spiritual capacity or to obtain spiritual guidance, and is otherwise denied.
(b) Intentional Infliction of Emotional Distress
The third and fourth causes of action sound in intentional infliction of emotional distress, and are alleged against both Flaum and Weinberger, respectively. To state a cause of action for intentional infliction of emotional distress, the conduct complained of must be “ ‘so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’ ”. (Fischer v Maloney, 43 NY2d 553, 557, quoting Restatement [Second] of Torts §46 [1], comment d; see also, Freihofer v Hearst Corp., 65 NY2d 135, 143.) The conduct must be of such a nature that it “so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society”. (Freihofer v Hearst Corp., supra, at 143; see also, Murphy v American Home Prods. Corp., 58 NY2d 293, 303; Fischer v Maloney, supra, at 557.) More must be involved than hurt feelings; mere insults, indignities, *1019 threats or annoyances are insufficient. (See, Owen v Leventritt, 174 AD2d 471, Iv denied 79 NY2d 751; Lincoln First Bank v Barstro & Assocs. Contr., 49 AD2d 1025.) Intent or recklessness is an essential element of the cause of action.
In our case, plaintiff contends that the disclosure of privileged communications made to a Rabbi by a penitent, done with malicious intent, meets this stringent standard. This court agrees. Bearing in mind the sanctity to be accorded such communications between clergy and penitent, and the necessity for confidentiality in conjunction with such spiritual counseling, without the fear of any reprisal or disclosure, it is both outrageous and intolerable that such communications would be revealed, even where, as here, this occurs in part in the context of a judicial proceeding. In my view, the conduct so transcends the bounds of decency as to be regarded as both intolerable and atrocious, within the standard expressed in Freihofer v Hearst Corp. (supra).
Thus, the motion to dismiss the third and fourth causes of action for intentional infliction of emotional distress is denied. Although cognizable claims are stated, factual issues do preclude summary resolution, including, inter alia, intent or recklessness, a critical element of the cause of action and one which cannot be resolved on this record. Moreover, although the cause of action is one governed by a one-year Statute of Limitations (CPLR 215 [3]; Gallagher v Directors Guild, 144 AD2d 261, Iv denied 73 NY2d 708; Goldner v Sullivan, Gough, Skipworth, Summers & Smith, 105 AD2d 1149, 1151), the limitations issue has not been raised or addressed on this record.
(c) Defamation
The fifth cause of action against defendant Weinberger for defamation must be dismissed. The alleged defamatory statements were set forth in the affirmation of defendant, which was submitted in the context of the marital proceeding to determine temporary child custody. “A written statement * * * in the course of a judicial proceeding is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation”. (Joseph v Larry Dorman, P. C., 177 AD2d 618; see also, Martirano v Frost, 25 NY2d 505.) Clearly, the statements were pertinent to the litigation in that they were intended to reflect upon plaintiffs fitness to be a good mother. Plaintiff claims that the statements fall without the scope of the privilege, since they must have been discussed and, therefore, published to her husband and/or his attorney *1020 prior to their having been reduced to writing for submission on the motion. She contends that this publication is not subject to any privilege.
However, it is patently clear from the complaint that the statements, whenever published, were made “in connection with the above action for divorce.” (Complaint 66.) The absolute privilege is not limited to statements made or documents used in open court. (See, Klein v McGauley, 29 AD2d 418.) Thus, the statements are absolutely privileged since made for the purpose of litigation and may not be the subject of a claim for defamation. Accordingly, the fifth cause of action for defamation as against defendant Weinberger is dismissed.
CONCLUSION
Accordingly, upon the foregoing the motion to dismiss and for summary judgment is granted (1) as to the first and second causes of action, in terms of liability, only to the extent of limiting, clarifying and defining the factual issues for trial, namely, whether the privilege had been waived by the presence of a third person, and whether the nature of the meeting was such that the communications and disclosures were made to the Rabbis in their spiritual capacity or to obtain spiritual guidance, and (2) dismissing the fifth cause of action for defamation as against defendant Weinberger, and is otherwise denied.
[Portions of opinion omitted for purposes of publication.]